**ALOHA AIRLINES, INC., Plaintiff,**

v.

**Keith AHUE, Director, Department of Labor and Industrial Relations, State of Hawaii, Defendant,**

**and,**

**Air Line Pilots Association, International, Intervenor.**

**Civ. No. 92–00234 DAE.**

United States District Court, D. Hawaii.

Oct. 2, 1992.

Robert S. Katz and Richard M. Rand, Torkildson Katz Jossem Fonseca Jaffe Moore & Hetherington, Honolulu, HI, for Aloha Airlines, Inc.

Warren Price, III, Atty. Gen., Steven S. Michaels and Girard D. Lau, Deputy Attys. Gen., Honolulu, HI, for Keith Ahue.

Jay M. Fidell and Denis Lee, Bendet Fidell Sakai & Lee, Honolulu, HI, Eugene B. Granof, Air Line Pilots Ass'n, Washington, DC, for Air Line Pilots Ass'n Inter.

## ORDER GRANTING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

This court heard defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment on September 21, 1992. Richard M. Rand, Esq. appeared on behalf of plaintiff. Girard D. Lau, Esq. appeared on behalf of defendant. Eugene B. Granof, Esq. and Denis Lee, Esq. appeared on behalf of the intervenor. After reviewing the motions and the accompanying memoranda and hearing oral argument, the court GRANTS plaintiff's cross-motion for summary judgment and DENIES defendant's motion for summary judgment.

### BACKGROUND

On April 4, 1992, plaintiff commenced this action seeking declaratory judgment that § 388–6(6) of the Hawaii Revised Statutes is preempted by Section 514(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a). On June 25, 1992, Magistrate Judge Barry Kurren allowed Air Line Pilots Association, International's ("ALPA") motion for intervention. On June 26, 1992 defendant moved for summary judgment. Plaintiff subsequently cross-moved for summary judgment on September 3, 1992.

Pursuant to its labor agreement with ALPA, at its own cost plaintiff provides its pilot employees and their dependents with health care benefits either through Hawaii Medical Service Association (HMSA) or Kaiser–Permanente (Kaiser). HMSA and

Kaiser provide their beneficiaries with periodic physical examinations. Federal Aviation Administration ("FAA") guidelines require pilots to submit to periodic examinations by FAA certified physicians. HMSA and Kaiser provide ample examinations for pilots below the rank of captain. Captains, however, are required to complete examinations every six months. Consequently, captains must pay out of their own pockets for at least one of the physical exams.

HRS § 388–6 states:

Withholding of wages. No employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee, provided that the following may not be so authorized, or required to be borne by the employee:

. . . . .

(6) Medical or physical examination or medical report expenses which accrue due to services rendered to any employee or prospective employee, where such examination or report is requested or required by the employer or prospective employer or required by any law or regulation of federal, state or local governments or agencies thereof.

The supersedure provision of ERISA, 29 U.S.C. § 1144(a), provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title . . .

In April, 1991, Mario R. Ramil, then Director of Labor and Industrial Relations for the State of Hawaii, issued an opinion that HRS § 388–6(6) requires an employer to pay for medical examinations mandated by the FAA. Plaintiff seeks a declaration that interpretation of HRS § 388–6(6) is preempted by the supersedure provision of ERISA.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrates the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *State Farm Fire and Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir.1989).

## DISCUSSION

### I. Standing

 In order for a plaintiff to have standing, his claim must allege an injury in fact, fairly traceable to the defendant's allegedly unlawful conduct, which is likely to be redressed by the relief requested of the court. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or foregone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.

*Lujan v. Defenders of Wildlife*, —— U.S. ——, ——, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992). Here, the plaintiff is

the direct object of a redressible action by defendant. Consequently, the plaintiff has standing.

## II. *Preemption*

■ Congress enacted ERISA as a comprehensive legislative scheme to govern private employee benefit plans. The primary goal of Congress in doing so was to create uniformity and stability in the law. *See Kuntz v. Reese,* 760 F.2d 926 (9th Cir.1985). In order to maintain such uniformity, Congress included a broad preemption clause providing that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

The legislative history of ERISA indicates that Congress wanted the supersedure provision of ERISA to be construed broadly by the federal courts. Congress explicitly rejected a preemption provision that would have limited the scope of the supersedure clause to state laws dealing specifically with ERISA plans. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98–99, 103 S.Ct. 2890, 2900–2901, 77 L.Ed.2d 490 (1983). According to Senator Williams, one of the bill's sponsors:

> The substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law.

120 Cong.Rec. 29197 (1974).

Thus, the key language in § 514(a), found in the words "relate to," is to be construed as broadly as possible. *Inger-*

*soll–Rand Co. v. McClendon,* 498 U.S. 133, ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw, supra,* at 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. "Under this 'broad common sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). See also *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) ("[Congress] did not mean to preempt only state laws specifically designed to affect employee benefit plans." *FMC Corp.,* 498 U.S. at ——, 111 S.Ct. at 408.) Under the *Shaw* definition, HRS § 388–6(6) clearly relates to an employee benefit plan.

While ERISA is broad, it is not all-encompassing. Several categories of state laws have been found to be beyond the grasp of ERISA. State laws that affect employee benefit plans in a "tenuous, remote, or peripheral" manner do not "relate to" the plan. *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Furthermore, the Supreme Court has held that only state laws that relate to benefit plans are preempted. *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 23, 107 S.Ct. 2211, 2223, 96 L.Ed.2d 1 (1987).[1]

HRS § 388–6(6) relates to an employee benefit plan in a manner that is neither tenuous nor remote. Defendant contends that the provision of employer-paid mandatory medical examinations does not relate to an employee benefit plan because the examination is for the benefit of the employer and not the employee.

---

1. ERISA itself also limits the scope of its supersedure clause. Defendants point to 1144(b)(4) which provides that 1144(a) "shall not apply to any generally applicable criminal law of a State," and contend that HRS § 388–6 is such a generally applicable criminal law. Defendants contend that a criminal law specifically directed at employee benefit plans is a generally applicable criminal law where it affects all employers within the state. The better and pre-

vailing view is that Congress intended the words "generally applicable" to refer to criminal laws that apply to general conduct like larceny and embezzlement. *Sforza v. Kenco Constructional Contracting, Inc.,* 674 F.Supp. 1493, 1495 (D.Conn.1986). *See also, Baker v. Caravan Moving Corp.,* 561 F.Supp. 337, 341 (N.D.Ill.1983); *National Carriers' Conference Committee v. Hefferman,* 454 F.Supp. 914, 915–16 (D.Conn.1978).

Indeed, the instant case is distinguishable from the majority of ERISA preemption cases by the fact that the employer is the partial beneficiary of the employee benefit. But it would be incorrect to say that the employee does not receive a benefit from HRS § 388–6(6). Routine medical examinations are a condition of employment to which airline pilots voluntarily consent in choosing their career. Pilots receive a direct benefit from HRS § 388–6(6) in the form of free examinations for which they would otherwise have to pay.

Furthermore, defendant's argument misses the point of ERISA preemption. The relevant question in determining the scope of ERISA preemption is whether the state statute modifies an employee benefit plan. The nature of the modification is not the issue (though defendant is unpersuasive in its attempt to categorize the medical examinations as being purely for the benefit of the employer), but rather the nature of the object being modified. HRS § 388–6(6) relates to an employee welfare benefit plan because it modifies the terms of an agreement governing the distribution of health care benefits that is clearly governed by ERISA.

Consequently, defendant's reliance upon *Massachusetts v. Morash*, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989) is misplaced. In *Morash*, the Supreme Court held that a Massachusetts law requiring an employer to pay a discharged employee his full wages including holiday or vacation pay, was not preempted because the underlying Bank vacation policy was not an employee welfare plan within the meaning of ERISA. "It is unlikely that Congress intended to subject to ERISA's reporting and disclosure requirements those vacation benefits which by their nature are payable on a regular basis from the general assets of the employer and are accumulated over time only at the election of the employee." 490 U.S. at 116, 109 S.Ct. at 1673. While the mode of modification in *Morash* is similar to the instant case, the underlying plan is different. Aloha's medical benefit plan is not analogous to the vacation pay plan in *Morash*.

In *Standard Oil Co. of California v. Agsalud*, 633 F.2d 760 (9th Cir.1980), the Ninth Circuit rejected the argument that the Hawaii comprehensive Prepaid Health Care Act, requiring Hawaiian employers to provide their employees with a comprehensive prepaid health care plan and to pay one-half the cost of health insurance premiums, was not covered by ERISA because the provisions of that act were concerned principally with benefits rather than administration noting:

There is … nothing in the statute to support such a distinction between the state laws relating to benefits as opposed to administration. As the district court pointed out, the language of the statute provides that ERISA shall supersede 'any and all State laws' and that does not mean 'some but not all of the State laws.'

633 F.2d at 765 quoting same case, 442 F.Supp. 695, 707 (N.D.Cal.1977).

HRS § 388–6(6) modifies an employee benefit plan. It is not a single event devoid of administrative implications as in *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 10–11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987), but rather an ongoing obligation that modifies employers duties. The scope of this modification is irrelevant. In choosing the expansive language of § 1144(a), Congress recognized that employers maintaining employee benefit plans are faced with a complex administrative task. "'ERISA's comprehensive preemption of state law was meant to minimize this sort of interference with the administration of employee benefit plans', so that employers would not have to 'administer their plans differently in each State in which they have employees.'" *Coyne*, 482 U.S. at 10, 107 S.Ct. at 2217 quoting *Shaw*, 463 U.S. at 105, 103 S.Ct. at 2904. "Preemption ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations." *Coyne*, 482 U.S. at 11, 107 S.Ct. at 2217. HRS § 388–6(6) poses an additional administrative burden on plaintiffs, requiring an ongoing administrative scheme to track the examinations required by the FAA.

Intervenor, Air Line Pilots Association, International cogently asks what difference there could be between a state statute requiring employers to pay for the uniforms

they wear on the job, which would not be preempted, and a statute requiring employers to pay for mandatory physical examinations. The distinction lies in the object being modified. Though the statutes are analogous in their intent, if the latter has the effect of modifying an employee welfare benefit plan then it is preempted by the broad language of § 1144(a).

Because HRS § 388–6(6) relates to an employee benefit plan it is preempted by ERISA.

## CONCLUSION

For the reasons stated above, the court GRANTS plaintiff's cross-motion for summary judgment and DENIES defendant's motion for summary judgment.

IT IS SO ORDERED.