**ALOHA AIRLINES, INC.,**
**Plaintiff–Appellee,**

v.

**Keith AHUE, Defendant–Appellant,**

**and**

**Air Line Pilots Association, International, Intervenor–Appellant.**

**Nos. 92–16881, 92–16906.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1993.

Decided Dec. 21, 1993.

---

Girard D. Lau, Deputy Atty. Gen., Honolulu, HI, for defendant-appellant.

Eugene B. Granof, Air Line Pilots Ass'n, Intern., Washington, DC, for intervenor-appellant.

Richard M. Rand, Torkildson, Katz, Jossem, Fonseca, Jaffe, Moore & Hetherington, Honolulu, HI, for plaintiff-appellee.

Before POOLE, WIGGINS and T.G. NELSON, JJ.

POOLE, Circuit Judge:

Keith Ahue, the current Director of Labor and Industrial Relations for the State of Hawaii, and the Air Line Pilots Association, International ("ALPA") appeal the district court's summary judgment in favor of Aloha Airlines, Inc. ("Aloha") in Aloha's action seeking declaratory judgment that Hawaii Payment of Wages Law, Hawaii Revised Statute ("H.R.S.") § 388–6(6) is preempted by section 514(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a). Ahue also appeals the district court's determination that H.R.S. § 388–6(6) is not a generally applicable criminal law of a state under ERISA § 514(b)(4), 29 U.S.C. § 1144(b)(4), which saves such laws from ERISA preemption. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we now affirm.

■ We review the district court's grant of summary judgment de novo. *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 816 (9th Cir.1992). We also review de novo the district court's interpretation and application of ERISA provisions and its determination that ERISA preempts a state law. *Ruocco v. Bateman, Eichler, Hill, Richards, Inc.*, 903 F.2d 1232, 1235–36 (9th Cir.), *cert. denied*, 498 U.S. 899, 111 S.Ct. 254, 112 L.Ed.2d 212 (1990).

I

Under Federal Aviation Administration ("FAA") regulations, airline pilots of the rank of captain and first officer must undergo semiannual and annual medical examinations, respectively, to maintain their Airline Transport Pilot ("ATP") Certificates. *See* 14 C.F.R. § 61.151; 14 C.F.R. § 67.13. These exams, the procedures of which are outlined in 14 C.F.R. § 67.13, are intensive in nature and must be given by an FAA-certified physician. *See* 14 C.F.R. § 67.23.

Pursuant to a collectively bargained labor agreement between Aloha and ALPA, the pilot employees' labor union, Aloha provides its pilot employees a choice of two comprehensive employee group medical plans: a Kaiser Permanente ("Kaiser") plan and a

Hawaii Medical Service Association ("HMSA") plan. Aloha pays for the entire cost of each health care plan. The Kaiser plan covers the cost of one annual FAA-mandated medical examination, and the HMSA plan pays for an FAA-mandated examination only if the examination is required by a physician.

In June 1991, Mario E. Ramil, the Director of the Department of Labor and Industrial Relations ("DLIR") for the State of Hawaii and Ahue's predecessor, issued an opinion that H.R.S. § 388–6(6),[1] which requires an employer to pay or provide for the cost of medical examinations mandated by federal law, applies to periodic medical examinations mandated by the FAA for airline pilots of the rank of captain or first officer.

In response to a letter from Aloha requesting that the DLIR reconsider its position, Ramil reaffirmed his opinion, stating that the Hawaii legislature intended H.R.S. § 388–6(6) to require employers to pay any costs associated with mandatory examinations.

On April 17, 1992, Aloha filed a complaint against Ahue in federal district court seeking a declaration that H.R.S. § 388–6(6) was preempted by ERISA § 514(a), 29 U.S.C. § 1144(a). On June 25, 1992, the magistrate judge permitted a motion for intervention by ALPA. Ahue moved for summary judgment on June 26, 1992. On September 3, 1992, Aloha filed a cross motion for summary judgment.

On October 13, 1992, the district court entered a judgment granting summary judgment in favor of Aloha and against Ahue. 807 F.Supp. 1501. On October 15, 1992, the court entered a judgment declaring that H.R.S. § 388–6(6), to the extent it requires

Aloha to provide or pay for those medical examinations of its pilots required by the FAA, is preempted by ERISA. Ahue and ALPA timely appeal.

## II

ERISA is a comprehensive legislative scheme enacted by Congress "to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). In enacting ERISA, Congress also intended to safeguard employer's interests by "eliminating the threat of conflicting and inconsistent State and local regulation of employee benefit plans." *Id.* at 99, 103 S.Ct. at 2901 (quoting 120 Cong. Rec. 29197 (1974) (remarks of Rep. Dent)).

To ensure uniformity and consistency in such laws throughout the states, Congress included within ERISA "one of the broadest preemption clauses ever enacted by Congress." *PM Group Life Ins. v. Western Growers Assur. Trust,* 953 F.2d 543, 545 (9th Cir.1992) (quoting *Evans v. Safeco Life Ins. Co.,* 916 F.2d 1437, 1439 (9th Cir.1990)). Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides that the ERISA provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). An "employee benefit plan" includes any "employee welfare benefit plan," 29 U.S.C. § 1002(2)(B), (3). An "employee welfare benefit plan" comprises

> any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, ... for the purpose of providing for its participants or their beneficiaries, through the

---

1. H.R.S. § 388–6(6) provides in relevant part: Withholding of wages. No employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee, provided that the following may not be so authorized, or required to be borne by the employee:

   (6) Medical or physical examination or medical examination or medical report expenses

   which accrue due to services rendered to any employee or prospective employee, where such examination or report is requested or required by the employer or prospective employer or required by any law or regulation of federal, state or local governments or agencies thereof. Haw.Rev.Stat. § 388–6(6).

purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits · in the event of sickness, accident, disability, ·death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in ·section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).[2]

## III

Ahue contends that the district court erred in holding that to the extent that H.R.S. § 388–6(6) requires Aloha to pay or provide for periodic FAA-mandated medical examinations for its pilots, it is preempted by ERISA. Specifically, Ahue argues that H.R.S. § 388–6(6) does not "relate to" an "employee welfare benefit plan" because it does not provide a "medical benefit" to a pilot within the scope of an ERISA employee welfare benefit plan.[3] · Given Congressional policy underlying ERISA to promote and protect employee interests, Ahue argues, only those "medical benefits" that provide personal, direct, and immediate aid to a participant employee are within ERISA's purview. Ahue contends that an FAA-mandated medical examination is not a personal "medical benefit" under ERISA because unlike an ordinary medical examination, which a pilot undertakes voluntarily for personal health reasons, the FAA examination is a compelled obligation, undertaken by a pilot involuntarily to maintain his ATP flying certificate. In addition, the FAA examination, with its intensive tests designed to evaluate health conditions primarily relevant to a pilot's ability fly an airplane, does not provide a direct or immediate personal benefit to the pilot, and

its purpose is not to safeguard the personal health and well-being of the pilot, but ensure the safety of the general public. Since the examination is not a "medical benefit" under ERISA, Ahue concludes, H.R.S. § 388–6(6) is not governed by ERISA and necessarily ,cannot be preempted.[4]

Whether an FAA-mandated medical examination constitutes a "medical benefit" within ERISA's purview cannot be conclusively determined from ERISA's language, its legislative history, or existing case law. ERISA itself does not further define the term "medical benefit." ERISA's legislative history also provides no specific guidance as to the meaning of this term. In addition, no federal cases have specifically considered the scope of a "medical benefit" under an ERISA plan.

■ Nevertheless, we are not persuaded by Ahue's contentions. Although the ultimate purpose of an FAA-mandated medical examination appears to be to ensure the safety of the general public, this purpose is achieved only by ensuring and safeguarding the pilot's personal health. The safety of a plane's· passengers is inextricably linked to the personal health of the pilot charged with flying the plane. While the examination is geared primarily to test a pilot's ability to fly a plane safely, at the same time it evaluates various aspects of the pilot's health and provides the pilot with a direct and immediate assessment of his personal medical condition.

Furthermore, ERISA's legislative history does not suggest that Congress intended to limit the scope of employee "medical benefits" to encompass only those "benefits" that solely benefit an employee recipient. Moreover, the legislative history does not imply that Congress intended to distinguish be-

---

**2.** State laws that regulate insurance, banking, or securities are exempt from the ERISA preemption provision under ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A). These exemptions are not applicable in this case.

**3.** Intervenor ALPA joins Ahue in this argument.

**4.** Ahue does not dispute that the Kaiser and HMSA health care plans Aloha provides for its pilot employees are ERISA employee welfare benefit plans. Rather, he argues that because

the FAA-mandated medical examinations are not "medical benefits" within the meaning of an ERISA plan, 29 U.S.C. § 1002(1), the provisions in Aloha's health care contracts that provide for partial coverage of the FAA-required examinations are not "part" of either ERISA plan. He contends that only those provisions of the health care contracts that do not pertain to the FAA-required examinations comprise the ERISA plans.

tween voluntarily obtained benefits and compelled benefits.

Finally, ERISA was enacted to promote and protect employer interests as well as employee interests. By including FAA-mandated medical examinations under ERISA's broad umbrella of "medical benefits," airline employers are protected from conflicting and disparate state and local regulation of these medical provisions in employee benefit plans.

For these reasons, and given ERISA's broad language and Congress' express intent to preempt the field of state laws pertaining to employee welfare benefit plans, we hold that an FAA-mandated medical examination constitutes a "medical benefit" within the meaning of an ERISA employee welfare benefit plan.

### IV

Ahue next contends that H.R.S. § 388–6(6) is not preempted by ERISA because the employer payments required by the statute for FAA–mandated medical examinations do not implicate ERISA's primary concerns, which involve safeguarding employees from the abuse and mismanagement of funds accumulated to finance employee benefits. *See Massachusetts v. Morash*, 490 U.S. 107, 115–16, 109 S.Ct. 1668, 1673–74, 104 L.Ed.2d 98 (1989) (holding that ordinary vacation payments that are fixed in amount, due at known times, paid from the employer's general assets, and do not depend on contingencies outside the employee's control do not implicate ERISA's concern with employer mismanagement of funds accumulated to finance employee benefits). Like the vacation payments in *Morash*, Ahue argues, payments for FAA-mandated medical examinations have a fixed fee, are due at regularly scheduled six-month or one-year intervals, do not depend upon contingencies outside of a pilot employee's control, and can be paid from the Aloha's general assets. Thus, Ahue concludes, because H.R.S. § 388–6(6) does not impose upon Aloha the type of contingent and unpredictable financial obligation that requires careful management of employee funds, it is not subject to ERISA preemption. We disagree.

On the contrary, the *Morash* Court's reasoning supports the conclusion that employer payments for FAA-mandated examinations implicate ERISA's principal concerns. Unlike the fixed, regularly paid vacation payments considered in *Morash*, payments for FAA–mandated medical examinations are not necessarily fixed or paid regularly and may depend on contingencies outside the pilot employee's control. Here, although captains and first officers must undergo the examinations on a semiannual and annual basis, respectively, an airline does not typically know in advance how many of its pilot employees will be required to have such examinations. For example, during the course of a year, a pilot's status may change from first officer to captain (or vice versa), depending upon an airline's needs. In addition, an airline cannot often predict how many pilots of a particular status it will need during the coming year. Moreover, a pilot may elect to take his examination before the period for his previous examination has expired. Thus, unlike the employer in *Morash*, an airline employer cannot necessarily determine the amount of monies to budget for such payments well in advance of the expected payment date. Such periodic payments for semiannual and annual medical examinations of pilots, even if paid from an airline's general assets, are not analogous to salary payments, as were the vacation payments in *Morash*, and would require an airline to establish a plan to administer and manage them. Therefore, we reasonably can conclude that payments for these examinations do involve ERISA's concerns.

Ahue, however, argues further that ERISA's concerns with the abuse and mismanagement of funds accumulated to finance employee benefits are absent here because Aloha has a self-interest in ensuring that its pilot employees undergo FAA-required medical examinations so as to maintain their ATP flying certificates. This contention fails. All employers have self-interests in ensuring their employees' health; such interests do not preclude ERISA's application.

### V

Because we hold that an FAA-medical examination is a "medical benefit" within

ERISA's purview, we must next decide whether H.R.S. § 388–6(6) is preempted by ERISA.

The threshold question in an ERISA preemption inquiry is whether a state law "relates to" an employee welfare benefit plan. A state law "relates to" an employee welfare benefit plan "if it has a connection with or reference to such a plan." *Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900 (footnote omitted). A state law that "relates to" an ERISA plan is preempted by ERISA "even if the law is not specifically designed to affect such [a] plan[ ], or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). Only those state laws that "relate to" ERISA plans are preempted. *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 23, 107 S.Ct. 2211, 2223–24, 96 L.Ed.2d 1 (1987). Where a state law affects employee benefit plans in a tenuous, remote, or peripheral manner, however, the law does not "relate to" an ERISA plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

Distinguishing between state laws that "relate to" employee welfare benefit plans and those that have only a "tenuous, remote, or peripheral impact" upon such plans is not a simple task. In determining whether a state law "relates to" an ERISA plan, we consider the following factors: (1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans (*Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2899–2900 (state law requiring pregnancy benefits "relates to" ERISA plan); *Standard Oil Co. v. Agsalud,* 633 F.2d 760, 766 (9th Cir.1980), *aff'd mem.,* 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981) (state law requiring alcohol and drug abuse treatment benefits "relates to" ERISA employee benefit plan)); (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law (*Fort Halifax,* 482 U.S. at 12–13, 107 S.Ct. at 2217–18 (state law requiring companies to make a one-time, lump-sum severance payment when closing plants does not "relate to" an ERISA plan, since the law does not require the establishment or maintenance of a plan)); (3) whether the state law imposes reporting, disclosure,

funding, or vesting requirements for ERISA plans (*Standard Oil,* 633 F.2d 760, 763–64 (reporting requirements)); and (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee (*General Am. Life Ins. Co. v. Castonguay,* 984 F.2d 1518, 1521–22 (9th Cir.1993) (statute subjecting trustees to personal liability for actions performed while discharging their responsibility to trust is preempted by ERISA as applied to contract entered into by trustees for ERISA trust)).

On the other hand, state laws that have a remote or peripheral relationship with an ERISA benefit plan are typically "laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental." *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 146 (2d Cir.1989), *cert. denied,* 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989) (holding ERISA does not preempt state escheat law of abandoned property as it applies to uncollected drafts for employee benefits) (citing *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 830–841, 108 S.Ct. 2182, 2185–2192, 100 L.Ed.2d 836 (1988) (holding ERISA does not preempt generally applicable garnishment law under which creditors may garnish ERISA benefits)). *See also Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (ruling Congress did not intend to preempt areas of traditional state regulation).

Applying the above factors to this case, we hold that H.R.S. § 388–6(6) "relates to" an ERISA plan. Like the statutes in *Shaw* and *Standard Oil,* the statute in this case regulates a type of benefit of an ERISA plan. *See, e.g., Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900; *Standard Oil,* 633 F.2d at 763–64 (holding that where a state law demands that an employer provide its employees specific benefits included within the scope of an ERISA plan, that law "relates to" the ERISA plan and is preempted). Here, H.R.S. § 388–6(6) requires Aloha to modify the benefits or terms of its Kaiser and

HMSA benefit plans in order to provide its pilots with FAA-mandated medical examinations.

H.R.S. § 388–6(6) also "relates to" an ERISA plan because it requires Aloha alternatively to create a separate benefit plan to provide for these FAA-mandated medical examinations.[5] Unlike the state law in *Fort Halifax*, which required an employer to make a one-time, lump-sum severance payment, H.R.S. § 388–6(6) requires Aloha to establish an administrative scheme to pay recurring medical benefits for the FAA-required examinations at varying times in varying amounts for different numbers of pilots, depending upon a pilot's current rank. The establishment of such a scheme clearly implicates an ERISA plan. *See Fort Halifax*, 482 U.S. at 12, 107 S.Ct. at 2221 n. 12.

Moreover, because H.R.S. § 388–6(6) creates potential reporting requirements for Aloha's ERISA plans, as in *Standard Oil*, and prompts disclosure and funding requirements, as outlined in *Shaw*, it satisfies the "relates to" standard. *See, e.g., Shaw*, 463 U.S. at 98, 103 S.Ct. at 2900–01.

Finally, H.R.S. § 388–6(6) "relates to" an ERISA plan because it regulates the relationships between Aloha and its pilot employees and the obligations flowing from these relationships. *Castonguay*, 984 F.2d at 1521. In *Castonguay*, we explained that

> [t]he key to distinguishing between what ERISA preempts and what it does not lies ... in recognizing that the statute comprehensively regulates certain *relationships:* for instance, the relationship between plan and plan member, between plan and employer, [and] between employer and employee (to the extent an employee benefit plan is involved).... [B]ecause state laws regulating these relationships (or the obligations flowing from these relationships) are particularly likely to interfere with ERISA's scheme, these laws are presumptively preempted.

*Id.* (emphasis in original) (citations omitted). Here, H.R.S. § 388–6(6) clearly regulates the relationships between Aloha and its pilot employees and between Aloha and its employee benefit plan. Additionally, the statute regulates the obligations arising from these relationships.

Consequently, H.R.S. § 388–6(6) has more than a tenuous, peripheral, or tangential relationship with such a plan. Unlike the laws in *Aetna Life* and *Mackey*, H.R.S. § 388–6(6) is not a generally applicable state law whose impact on an ERISA plan is merely incidental. *See Aetna Life*, 869 F.2d at 146–47; *Mackey*, 486 U.S. at 831–38, 108 S.Ct. at 2186–90. Rather, the statute has a direct impact on the Aloha's ERISA plans, since it requires Aloha either to modify its existing plans or to establish a new plan. In addition, the statute effects the primary administrative functions of Aloha's plans because it compels Aloha to ascertain whether a pilot is eligible for a particular benefit (by determining that pilot's rank and status periodically) and to assess the amount of the benefit. *See Aetna Life*, 869 F.2d at 146–47. Furthermore, unlike the state laws in *Aetna Life* and *Mackey*, H.R.S. § 388–6(6) does not represent a regulation of traditional state authority. *See id.* at 147; *Mackey*, 486 U.S. at 831–32, 108 S.Ct. at 2186–87.

We conclude that no reasonable factfinder could find that H.R.S. § 388–6(6) does not "relate to" or has a tenuous, remote, or peripheral relationship with Aloha's ERISA plans. Because H.R.S. § 388–6(6) relates to an ERISA plan, it is preempted. Accordingly, we affirm the district court's summary judgment on this claim.

## VI

Ahue contends alternatively that even if H.R.S. § 388–6(6) "relates to" an employee benefit plan, it is nevertheless saved from ERISA preemption because it is generally applicable criminal law under ERISA § 514(b)(4), 29 U.S.C. § 1144(b)(4), which provides that ERISA preemption "shall not apply to any generally applicable

---

5. Ahue argues that H.R.S. § 388–6(6) does not require Aloha to establish an ERISA "employee welfare benefit plan" because FAA-mandated medical examinations are not "medical benefits" within ERISA's scope. Because we hold that FAA-mandated medical examinations do constitute medical benefits under ERISA, this contention fails.

criminal law of a State." Ahue argues that H.R.S. § 388–6(6) is a "criminal law" because Chapter 388 H.R.S. contains a criminal penalty for employers that violate the other sections of the chapter, including H.R.S. § 388–6(6), and that H.R.S. § 388–6(6) is "generally applicable" because it affects all employers within the state.[6] Ahue bases his argument upon *Goldstein v. Mangano,* 99 Misc.2d 523, 417 N.Y.S.2d 368, 374–75 (1978), which held that a criminal law specifically aimed at employee benefit plans is a "generally applicable criminal law" where it affects all employers within the state. *Id.*

We reject this contention. No federal courts have followed *Goldstein,* and at least one federal court has criticized *Goldstein* as conflicting with ERISA's language, its legislative history, and its construction by the courts. *Calhoon v. Bonnabel,* 560 F.Supp. 101, 109 (S.D.N.Y.1982). Moreover, the majority of courts have found that a criminal law directed at employee benefit plans is not a "generally applicable criminal law." *See, e.g., Trustees of Sheet Metal Workers' Int'l Ass'n Prod. Workers' Welfare Fund (New York) v. Aberdeen Blower and Sheet Metal Workers, Inc.,* 559 F.Supp. 561, 562–63 (E.D.N.Y.1983). We conclude, as did the district court, that "the better and prevailing view is that Congress intended the words 'generally applicable' to refer to criminal laws that apply to general conduct like larceny and embezzlement." *Aloha Airlines, Inc. v. Ahue,* 807 F.Supp. 1501, 1503 n. 1. *See also Sforza v. Kenco Constructional Contracting, Inc.,* 674 F.Supp. 1493, 1495 (D.Conn.1986); *National Carriers' Conference Comm. v. Heffernan,* 454 F.Supp. 914, 915–16 (D.Conn.1978).

Here, H.R.S. § 388–6(6) does not represent a "generally applicable criminal law" because failure by an employer to pay or provide its employees with employment-related expenses is not general criminal conduct such as larceny and embezzlement. Clearly, Congress did not intend to save from ERISA's broad preemptive reach a

statute imposing a criminal penalty on such conduct. Thus, ERISA § 514(b), 29 U.S.C. § 1144(b)(4), does not save H.R.S. § 388–6(6) from ERISA preemption.

**AFFIRMED.**

---

6. H.R.S. § 388–6(6) applies to all employers except government employers, as indicated by H.R.S. § 388–1.