# Supreme Court of the Navajo Nation

**John MacDonald, Imogene MacDonald, Clayton Duke Benally,
all on behalf of Elizabeth Eve Benally, a minor,
and the Estate of Lucinda Ruth MacDonald, Appellants,**

v.

**Tom Earl Ellison Jr., BHP-Minerals, Inc.,
and Metlife Insurance Company, Appellees.
Decided December 15, 1999**

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and CADMAN, Associate Justices.

F.D. Moeller, Esq., Farmington, New Mexico, and Samuel Pete, Esq., Shiprock, Navajo Nation (New Mexico), for the Appellants; and Damon L. Weems, Esq., Farmington, New Mexico, for the Appellees.

Opinion delivered by AUSTIN, Associate Justice.

The issue before the Court is whether the preemption provisions in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a), supersede Navajo Nation law and divest Navajo Nation courts of jurisdiction over this matter. This dispute centers on whether ERISA is the exclusive remedy for the Appellants in this action. We find that ERISA is not the exclusive remedy in this case and does not preempt the Appellants' claims for the insurance proceeds in the Navajo Nation courts. Therefore, we reverse the Shiprock Family Court's dismissal of the suit for lack of jurisdiction and remand the case for a decision on who is entitled to the insurance proceeds.

## I

The Appellants[1] and Appellee Tom Earl Ellison ("Ellison") are members of the Navajo Nation and live within the borders of the Navajo Nation. Lucinda Ruth MacDonald ("MacDonald"), the deceased whose estate is an appellant, was an employee of BHP-Minerals, Incorporated ("BHP"). The BHP facility where MacDonald worked is located within the borders of the Navajo Nation and the plant uses natural resources extracted from the Navajo Nation. BHP operates on

---

1. In this opinion, Elizabeth Eve Benally and the Estate of Lucinda Ruth MacDonald are collectively referred to as "Appellants," and Tom Earl Ellison Jr., BHP-Minerals, Inc., and Metlife Insurance Company are collectively referred to as "Appellees."

the Navajo Nation pursuant to a lease with the Navajo Nation government.

While employed with BHP, MacDonald procured an employee group benefits package, which included a life insurance policy through Metlife Insurance. MacDonald listed Ellison, her husband, as the designated beneficiary of her life insurance policy. According to the terms of the benefits package, death benefits are to be paid to the designated beneficiary. See Appellees' Exhibit C at 9. The benefits package also contains provisions for eligible dependents of the employee and for accidental death benefits. *See id.*; Appellants' Statement of Relevant Facts.

MacDonald and Ellison were divorced on April 21, 1994. Their divorce decree did not mention the BHP employee benefits package or the underlying life insurance policy. The divorce decree noted that there were no children of MacDonald and Ellison and there was no community property from the marriage.

On June 9, 1995, MacDonald died in an automobile accident. Elizabeth Eve Benally ("Benally"), MacDonald's minor daughter from another marriage, is her sole surviving child. Benally is not Ellison's daughter. At the time of MacDonald's death, Ellison was the designated beneficiary of the BHP employee benefits plan including the Metlife life insurance policy.

On July 24, 1995, MacDonald's parents, on behalf of her estate and Benally, brought suit against the Appellees to enjoin payment of the Metlife insurance policy proceeds to Ellison. The complaint alleged that under Navajo Nation law — specifically under authority of *Apache, et al. v. Republic Nat'l Life Ins. Co.*, 3 Nav. R. 250 (Window Rock Dist. Ct. 1982) — the divorce decree nullified Ellison's rights to the life insurance proceeds and voided the designation of Ellison as a beneficiary of the policy. Further, the Appellants claimed that Benally, as the sole surviving child of MacDonald, was entitled to the insurance proceeds. The Shiprock Family Court granted a temporary restraining order preventing Ellison from collecting on the policy until it decided who was entitled to the proceeds.

On March 13, 1996, the Appellees moved to dismiss the Appellants' suit claiming that ERISA provided the exclusive remedy for the Appellants and therefore jurisdiction laid exclusively in federal court. The Shiprock Family Court granted the Appellees' motion to dismiss stating that ERISA preempted Navajo Nation law and the jurisdiction of the Navajo Nation courts. The Appellants appeal the Shiprock Family Court's decision.

## II

All parties agree that the employee benefits package issued by BHP to MacDonald is an ERISA plan and is governed by its provisions. We recognize that federal courts have exclusive jurisdiction over most claims brought under ERISA. *See Pela v. Peabody Coal Co.*, 6 Nav. R. at 238, 240-41 (1990). However, the question remains as to whether ERISA applies to and is the exclu-

sive remedy in the present matter. We address this question on alternative bases. First, we examine the applicability of general federal statutes, such as ERISA, to Indians. Second, we examine ERISA caselaw to determine whether ERISA preempts Navajo law in this case.

A

Generally, Indians are included in the application of statutes that apply to all persons. "[I]t is now well settled by many decisions of [the United States Supreme] Court that a general statute in terms applying to all persons includes Indians and their property interests." *FPC v. Tuscarora Indian Nation*, 362 U.S. 99, 116 (1960). However, federal courts recognize certain exceptions to this principle of general applicability. *See Lumber Indus. Pension Fund v. Warm Springs Forest Prod.*, 939 F.2d 683, 685 (9th Cir. 1991); *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d. 1113, 1116 (9th Cir. 1985). Namely,

> a general statute that does not expressly apply to Indians will not apply if: (1) the law touches 'exclusive rights of self-governance in purely intramural matters'; (2) the application of the law to the tribe would 'abrogate rights guaranteed by Indian treaties'; or (3) there is proof 'by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations....'

*Lumber Indus.*, 939 F.2d at 685 (citing *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d at 1116). With respect to the self-governance exception, it applies "only where the tribe's decision-making power is usurped." *Id.*

In *Donovan v. Navajo Forest Products Industries*, the Tenth Circuit Court of Appeals applied the above analysis and concluded that the Occupational Safety and Health Act ("OSHA"), a statute of general applicability, did not apply to a tribal business enterprise operating within the borders of the Navajo Nation. *See* 692 F.2d 709, 712 (10th Cir. 1982). The Court reasoned that applying OSHA would violate treaty provisions and would dilute the Navajo government's sovereignty and treaty-recognized rights to self-government. *See id.* The Court stated, "Absent some expression of legislative intent ... we shall not permit divestiture of ... tribal power ... merely on the predicate that federal statutes of general application apply to Indians just as they do to all other persons...." *Id.* at 714.

Like OSHA, "ERISA is a statute of general applicability." *Lumber Indus.*, 939 F. 2d at 685 (citing 29 U.S.C. § 1001). Further, "Congress did not expressly state that ERISA applies to Indian tribes." *See id.* Accordingly, we must determine whether any of the exceptions to the general applicability principle apply here.

It is well-recognized, both by Treaty and caselaw, that the Navajo Nation has exclusive rights of self-governance with respect to intramural matters. "Implicit in the Treaty of 1868 [between the United States of America and the Navajo Tribe of Indians] is the understanding that the internal affairs of the Navajo people are within the exclusive jurisdiction of the Navajo Nation government." *Billie*

*v. Abbott*, 6 Nav. R. 66, 68-69 (1988), (citing *Williams v. Lee*, 358 U.S. 217, 221-222 (1959)); *see Donovan v. Navajo Forest Products Indus.*, 692 F.2d at 711-12 ("The Navajo treaty language ... makes it clear ... that ... the United States Government agreed to leave the Navajos alone on their reservation to conduct their own affairs with a minimum of interference from non-Indians"). Further, "[t]he sovereignty retained by an Indian tribe includes 'the power of regulating [its] internal and social relations.'" *Billie*, 6 Nav. R. at 69 (citing *United States v. Kagama*, 118 U.S. 375, 381-82 (1886)).

The present matter deals purely with issues of internal relations and intramural Navajo Nation affairs. The decedent was an enrolled member of the Navajo Nation, and she lived and worked within the Navajo Nation's borders at all relevant times. Further, she procured her life insurance policy while working for a company located within the Navajo Nation. Also, the minor child and Appellee Ellison are enrolled members of the Navajo Nation, and both live within its borders. For these reasons, the dispute over the proper distribution of the insurance proceeds is properly viewed as arising on the Navajo Nation. Moreover, the underlying, substantive aspects of this case deal with marital, family and social relations among Navajo people. Such domestic issues constitute areas where Navajo traditions and principles of self-governance are the strongest. *See id.* at 69-70, 74.

Because this case deals with the internal affairs and social relations of Navajo tribal members, it is within the exclusive jurisdiction of the Navajo Nation government. *See id.* at 68-69. As in *Donovan v. Navajo Forest Products Industries*, the application of the federal statute to the present matter and the resulting divestiture of Navajo control over the issue would violate treaty provisions and would dilute treaty-recognized rights of sovereignty and self-government Specifically, applying ERISA to this matter would (1) touch upon the Navajo Nation's exclusive rights of self-governance over internal affairs; (2) usurp the Navajo Nation's decision-making power; and (3) abrogate rights over internal matters as guaranteed by the Treaty of 1868. As such, we hold that ERISA does not apply to this case, and the Shiprock Family Court may retain jurisdiction over the matter.

B

Although the above discussion regarding the applicability of general statutes to Indians is dispositive of this appeal, we will provide an alternative analysis of federal ERISA caselaw to determine whether ERISA preempts the application of the Navajo law on which the Appellants rely.

ERISA's preemption language expresssly declares that its "provisions ... shall supersede any and all state laws insofar as they now or hereafter relate to any employee benefit plan." 29 U.S.C.A. § 1144(a). As such, ERISA generally preempts the application of state and tribal law in cases involving ERISA employee benefit plans, such as the BHP plan in this case.

However, the United States Supreme Court "has come to recognize that ERISA pre-emption must have limits when it enters areas traditionally left to

state regulation." *Operating Eng'r Health and Welfare Trust Fund, et al. v. JWJ Contracting Co.*, 135 F.3d 671, 677 (9th Cir. 1998). Federal courts now treat the scope of ERISA's "relate to" preemption language as "markedly narrowed." *See Toumajian v. Frailey*, 135 F.3d 648, 653 n.3 (9th Cir. 1998) (referring to the "relate to" phrase in 29 U.S.C.A. § 1144(a)).

Under contemporary analysis of whether ERISA preempts the application of a state law, courts now "apply the principles of conflict and field preemption." *Emard v. Hughes Aircraft Co.*, 153 F.3d 949, 957 (9th Cir. 1998), *cert. denied*, 119 S. Ct. 903 (1999). Conflict preemption involves a two-step analysis in which courts ask (1) whether state law conflicts with any specific provision of ERISA and (2) whether state law has a "connection with ERISA such that application of the state law would frustrate ERISA's purposes." *Id.* at 957, 958. To assess whether a state law has "a connection" with an ERISA plan, the federal courts consider the following factors:

> (1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans;
> (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law;
> (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and
> (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and the employee.

*Id.* at 958 (citing *Aloha Airlines, Inc. v. Ahue*, 12 F.3d 1498, 1504 (9th Cir. 1993)). Finally, field preemption asks "whether Congress has completely occupied the field such that all state laws are preempted." *Id.* at 960-61.

In *Emard v. Hughes Aircraft*, the Ninth Circuit Court of Appeals determined that ERISA did not preempt the application of California community property laws which required ERISA insurance proceeds to be distributed to a person other than the designated beneficiary. *See generally*, 153 F.3d 949. First, the Court reasoned that there was no conflict preemption because (1) ERISA did not govern disputes between claimants to insurance proceeds and, thus, the state law did not conflict with any ERISA provision, and (2) the state community property law at issue had no connection with ERISA such that application of the law would frustrate ERISA's purpose. *See id.* at 957-960. Second, the Court determined that there was no field preemption because the community property law at issue did not "affect the duties of the employer or the plan entity, nor [did] it alter the rights of participants and beneficiaries as against the other plan entities." *Id.* at 961. The Court emphasized that the case concerned the "rights only of individual persons to insurance proceeds" and could be "decided without reference to the terms of the plan or the provisions of ERISA." *Id.* at 958, 961.

As in *Emard*, the local law at issue in the present matter involves the rights of individual persons to insurance proceeds. Without commenting on the ultimate

merits of this case, we note that, as in *Emard*, the Appellants wish to rely on Navajo common law, or customary law, addressing disputes between claimants to insurance proceeds. *See Apache*, 3 Nav. R at 253-54.

Following the *Emard* analysis, we first inquire whether the Navajo law conflicts with any express or implied provision in ERISA. A survey of ERISA reveals that the statute does not govern disputes between claimants to insurance proceeds. *See Emard*, 153 F.3d at 957-58. Thus, there is no conflict between ERISA and the Navajo law at issue in this case.

Next, we ask whether the Navajo law has a connection with ERISA such that the application of the Navajo law would frustrate ERISA's purpose. In undertaking this inquiry, we consider the four *Aloha* factors enumerated above. As the Ninth Circuit Court of Appeals found in *Emard*, we conclude that the Navajo law (1) does not regulate the types of benefits of ERISA employee welfare benefit plans; (2) does not require the establishment of a separate employee benefit plan; (3) does not impose reporting, disclosure, funding or vesting requirements of ERISA plans; and (4) does not regulate ERISA relationships. *See id.* at 958. The Navajo law at issue here "affects merely the ultimate ownership of distributed benefits." *See id.* at 959. As the *Emard* Court stated, "The determination of the rights to the proceeds will have no effect on the plan itself" and, "The relationships between ERISA entities remains unchanged." *Id.* at 960. For these reasons, we conclude that application of Navajo law to this case is not barred by conflict preemption.

Next, we ask whether Congress has completely occupied the field such that Navajo law is preempted. We note that "ERISA's preemption clause no longer has the power to transmute into a federal question every issue that brushes against the periphery of an ERISA plan." *Id.* at 961. "We must identify ... Congress' purposes in enacting ERISA to determine in what fields [Navajo] law is preempted." *Id.*

"In enacting ERISA, Congress intended to occupy the field of regulation of employee welfare and pension benefit plans." *Id.* "This occupation is complete, however, only as to regulation of ERISA plans as plans." *Id.* Here, the Navajo law does not regulate the BHP plan as such. That is, "it does not affect the duties of the employer or the plan entity, nor does it alter the rights of participants and beneficiaries as against the other plan entities." *Id.* The Navajo law merely helps to determine the proper ownership of insurance proceeds. Accordingly, application of the Navajo law to this case is not barred by field preemption.

## III

Pursuant to the alternative analyses of generally applicable federal statutes and federal ERISA preemption law, we hold that the Shiprock Family Court has jurisdiction over this action. We remand this case to that court to decide who is entitled to the life insurance proceeds under Navajo Nation law.