**ASSOCIATED BUILDERS AND CONTRACTORS, Saginaw Valley Area Chapter, a Michigan Non–Profit Corporation, Coleman Electric, Incorporated, a Michigan Corporation, Hovey Electric, Incorporated, a Michigan Corporation, Helm Electric, Incorporated, a Michigan Corporation,**

v.

**Lowell W. PERRY, Director of Department of Labor, State of Michigan and Michigan Chapter of the National Electrical Contractors Association.**

No. 91–CV–10373–BC.

United States District Court,
E.D. Michigan, N.D.

April 24, 1992.

David J. Masud, Masud and Gilbert, P.C., Saginaw, MI, for Associated Builders & Contractors, et al.

Christine A. Derdarian, Asst. Atty. Gen., Lansing, MI, for Lowell Perry.

George H. Kruszewski, Detroit, MI, for MI Chptr Nat'l Electrical Contr. Assoc.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

CLELAND, District Judge.

This matter is before the Court on cross motions for summary judgment. The parties have submitted extensive written materials briefing the relevant issues. Because the Court finds that the contested amendments to the Michigan Electrical Administrative Act are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), defendants' motion must be denied and plaintiffs' motion must be granted.

### BACKGROUND

Plaintiffs Coleman, Hovey, and Helm are electrical contractors involved in the business of erecting, installing, altering, repairing, servicing, and/or maintaining electrical wiring, devices, appliances, and/or equipment. Plaintiff Associated Builders and Contractors (ABC) is a trade organization that, among other things, provides instruction and training to apprentice electricians. In the past, the plaintiff contractors have apparently trained and employed on various construction

projects apprentice electricians who have received instruction from plaintiff trade organization.

Plaintiffs brought this action to enjoin the enforcement of recent amendments to the Michigan Electrical Administrative Act of 1956, M.C.L. 338.881 *et seq.* Plaintiffs challenge two specific provisions of the new law. The first, the "ratio requirement," restricts the use of apprentice electricians to no more than one apprentice for each licensed electrician on any given jobsite. *See* M.C.L. 338.-883e(3). The second, the "equivalency requirement," requires all apprentice electricians to participate in an apprentice training program that is approved by the Michigan Department of Labor and which adheres to standards equivalent to those adopted by the United States Department of Labor, Bureau of Apprenticeship and Training. *See* M.C.L. 338.883e(2). Plaintiffs contend that these two provisions impermissibly interfere with their established apprenticeship training programs and are preempted by ERISA and/or the National Labor Relations Act (NLRA).

### DISCUSSION AND ANALYSIS

 ERISA is a comprehensive statute which governs "employee welfare benefit plans." The term "employee welfare benefit plan" is defined to "mean any plan, fund or program ... maintained by an employer or by an employee organization, or by both, to the extent that ... [the plan] was established or is maintained for the purpose of providing for its participants ... apprenticeship or other training programs." 29 U.S.C. § 1002(1). The parties agree that the apprentices employed by plaintiff contractors and trained by ABC participate in "apprenticeship programs" governed by ERISA.

Section 514(a) of ERISA, commonly referred to as the "preemption clause," states that the Act

shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.

29 U.S.C. § 1144(a). The preemption clause has a broad reach. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) ("Congress used the words 'relate to' in § 514(a) in their

broad sense"); and *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) ("The pre-emption clause is conspicuous for its breadth").

The operative language of the preemption clause is the phrase "relate to"; whether Michigan's ratio and equivalency requirements are preempted by ERISA depends upon whether those provisions "relate to" plaintiffs' apprenticeship training programs. If the Court finds that the provisions do, in fact, relate to the apprenticeship training programs, the Court must hold that the provisions are superseded by ERISA. In *Shaw v. Delta Air Lines, Inc., supra.,* the Court defined 'relate to' as it is used in section 514(a). The Court said: "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such plan." *Id.* at 97, 103 S.Ct. at 2900.

Neither the Supreme Court nor the Court of Appeals for the Sixth Circuit has had occasion to consider a state law regulating an employer established apprenticeship training program in connection with ERISA's preemption clause. However, in *Boise Cascade Corp. v. Peterson,* 939 F.2d 632 (8th Cir. 1991), *petition for cert. filed,* 60 U.S.L.W. 3410 (U.S. Dec. 3, 1991) (no. 91707), the Eighth Circuit considered an employer's challenge to a Minnesota law regulating apprentice pipefitter training programs. The Minnesota rule established a minimum jobsite ratio for apprentice pipefitters: the rule required an employer to use one journeyman pipefitter for the first apprentice and three additional journeymen for each additional apprentice.

The Eighth Circuit found that the Minnesota ratio rule was "specifically designed to affect employee benefit plans" and that the rule's "very purpose ... was to require ... employers to train their apprentices in accordance with the minimum jobsite ratio rule." *Id.* at 637. The court found further that the Minnesota rule would also "expose[] ... employers to conflicting or inconsistent state and local regulations," *id.,* contrary to the preemption clause's intent to ensure that the administrative practices of benefit plans will

be governed by only a single set of regulations. (*See Ft. Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) at 8–14, 107 S.Ct. at 2215–2219 for a thorough discussion of the purpose of ERISA's preemption clause). The court then concluded that the Minnesota ratio rule "regulate[d], and was clearly intended to regulate, certain terms and conditions of the apprenticeship programs by establishing the manner in which employers can train and employ both journeymen and apprentice pipefitters." *Boise Cascade*, at 638. Accordingly, the court held that the Minnesota ratio requirement related to apprenticeship programs and was thus preempted by section 514(a) of ERISA.

The Michigan ratio requirement at issue here does not differ in any significant respects from the Minnesota ratio requirement struck down in *Boise Cascade*.[1] The Michigan ratio requirement clearly establishes the manner in which employers must train and employ apprentice electricians. In effect, the ratio requirement mandates a minimum benefit level by requiring employers to provide a minimum number of teachers per student at each jobsite. The ratio requirement also has the effect of limiting the number of apprentices who may participate in an employer's training program. And as the court found in *Boise Cascade, supra.,* Michigan's ratio requirement will likely expose electrical contractors who conduct business both in and out of Michigan to conflicting and inconsistent state and local regulations, contrary to the clear intent of the preemption clause.

This Court finds the Eighth Circuit's opinion to be well-reasoned and highly persuasive. The Court therefore adopts the reasoning of the *Boise Cascade* court and holds that the Michigan ratio requirement relates to plaintiffs' apprenticeship programs. This analysis applies with equal force to the Michigan equivalency requirement. In fact, the equivalency requirement goes even farther toward establishing minimum benefit levels and restricting an employer's ability to establish the manner in which to train apprentices.

Accordingly the Court holds that the equivalency requirement also relates to plaintiffs' apprenticeship programs.

■ The Court's inquiry, however, does not end with this conclusion. Defendants argue that even if the ratio and equivalency requirements are found to relate to plaintiffs' apprenticeship programs, the Michigan law is saved from preemption by section 514(d) of ERISA. That section, the "savings clause," provides:

> Nothing in this chapter shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States . . . or any rule or regulation issued under any such law.

29 U.S.C. § 1144(d). Defendants point to the Fitzgerald Act, 29 U.S.C. § 50 *et seq.,* and the regulations issued thereunder by the Secretary of Labor, 29 C.F.R. Part 29. Among other things, the Fitzgerald Act authorizes and directs the Secretary of Labor "to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices . . . [and] to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship. . . ." 29 C.F.R. § 29.1(b). The implementing regulations state that their purpose is "to set forth labor standards to safeguard the welfare of apprentices, and to extend the application of such standards by prescribing certain policies and procedures concerning the registration, for certain Federal purposes, [of] acceptable apprenticeship programs with the U.S. Department of Labor. . . ." 29 C.F.R. § 29.1(b). In order to qualify for federal approval, an apprenticeship program must include a "numeric ratio of apprentices to journeymen." 29 C.F.R. § 29.5(b)(7). Defendants argue that preemption of the Michigan ratio and equivalency requirements would alter, amend, modify, etc., the Fitzgerald Act and the implementing regulations. Thus, they contend, section 514(d) of ERISA saves the ratio and equivalency requirements from preemption.

---

1. The only difference between the Minnesota rule and the Michigan law under attack here is the prescribed journeymen to apprentice ratio. The Minnesota rule required one journeyman for the first apprentice and three journeymen for each additional apprentice, whereas the Michigan law requires a strict one to one ratio.

The Court cannot accept defendants' contention that the savings clause protects Michigan's ratio and equivalency requirements from preemption. The Fitzgerald Act and the implementing regulations relate only to an apprenticeship program's eligibility for federal registration. If a given apprenticeship program qualifies for federal registration, the apprenticeship program may then be eligible to receive certain benefits, such as a federal grant. *See* 29 C.F.R. §§ 29.2(k) and 29.3. The Fitzgerald Act and the implementing regulations thus provide incentives designed to encourage those who maintain apprenticeship training programs to adhere to certain guidelines promulgated by the Department of Labor.

The Court notes, however, that neither the regulations nor the Fitzgerald Act itself require employers to seek or to obtain approval for their apprenticeship programs; whether to seek federal registration for an apprenticeship program and whether to establish an apprenticeship program at all are completely voluntary decisions for each employer to make on its own. Nor does the Act contemplate any sort of enforcement mechanisms; employers who choose not to follow the standards necessary for federal registration do not thereby violate federal law. In sum, the Fitzgerald Act contemplates a voluntary system whereby employers wishing to obtain federal registration and any benefits appertaining thereto may do so by observing and adhering to certain apprenticeship training standards. Employers who do not desire federal registration of their apprenticeship programs are free to ignore the applicable Department of Labor standards.[2]

The foregoing convinces the Court that preemption of the ratio and equivalency requirements will not alter, amend, modify, invalidate, impair or supersede any law of the United States. Enjoining the enforcement of the ratio and equivalency requirements certainly will not, by itself, cause those employers who obtained federal registration for their electrician apprenticeship programs before the recent amendments to stop adhering to the relevant voluntary standards.

■ Defendant State of Michigan also argues that the ratio and equivalency requirements should not be preempted because they concern two subjects—occupational training and public safety—traditionally reserved to state regulation. The Court is inclined to agree that the regulation of these two areas is an exercise of traditional state regulatory power, but this fact does not alter the above analysis. First, there can be no doubt that Congress, pursuant to the commerce clause, U.S. Const., art. I, § 8, has the power to enact laws that impact upon matters traditionally the subject of local concern, such as occupational training and public safety, so long as those local matters affect interstate commerce. *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Second, when Congress, pursuant to its commerce clause power, makes clear an intent to preempt state laws, as it has done with section 514(a) of ERISA, the courts are bound to honor such intent.[3] The language of sec-

---

**2.** These factors distinguish the Fitzgerald Act from Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, which does contemplate enforcement mechanisms and which relies in part on state law to enforce it proscriptions. In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court held that certain provisions of a New York anti-discrimination law were saved from preemption by section 514(d) of ERISA, where those provisions were congruent with Title VII. Because the Fitzgerald Act does not rely on state law for enforcement, *Shaw* is inapplicable to the case at bar. For a thorough discussion of why preemption of state laws relating to apprenticeship programs does not alter, amend, modify, invalidate, impair or supersede the Fitzgerald Act or its implementing regulations, *see generally Hydrostorage, Inc. v. Northern California Boiler-*

*makers*, 891 F.2d 719, 730–2 (9th Cir.1989), *cert. denied*, 498 U.S. 822, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990).

**3.** Defendant State of Michigan's reliance on *Gregory v. Ashcroft*, 501 U.S. ——, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) is misplaced. At issue in *Gregory* was the application of the Age Discrimination in Employment Act of 1967 (ADEA) to a provision in the Missouri Constitution which required state judges to retire at age seventy. Because the Court found that application of the ADEA would have interfered with what the Court described as a "decision of the people of the State of Missouri, defining their constitutional officers," which went "beyond an area traditionally regulated by the States [and] is a decision of the most fundamental sort for a

54

tion 514(a) leaves no doubt but that Congress meant to preempt every state law that "relate[s] to" an employee benefit plan. Having found that the ratio and equivalency requirements of the Michigan Electrical Administrative Act of 1956, M.C.L. 338.883e(2) and (3), relate to plaintiffs' apprenticeship programs, and that they are not protected by the savings clause, the Court is compelled to hold that the Michigan requirements are preempted.

Because the Court holds that Michigan's ratio and equivalency requirements are preempted by ERISA, the Court need not reach the issue of NLRA preemption.

For the foregoing reasons, Defendants' Motion for Summary Judgment must be DENIED and Plaintiffs' Motion for Summary Judgment must be GRANTED.

IT IS SO ORDERED.

---

sovereign entity," *id.* at ——, 111 S.Ct. at 2400, 115 L.Ed.2d at 423, and because the Court found no clear congressional intent that ADEA was meant to cover state judges, the Court held that state judges were not covered by ADEA. The Court concluded, in essence, that Congress did not intend ADEA to apply to state judges. Here, while the ratio and equivalency requirements may be directed at matters traditionally regulated at the state level, these matters certainly do not rise to the level of "the most fundamental sort for a sovereign entity." *Id.* at ——, 111 S.Ct. at 2400, 115 L.Ed.2d at 423. Furthermore, section 514(a) provides a clear statement of congressional intent to preempt state laws that relate to employee benefit plans.