ASSOCIATED BUILDERS AND CONTRACTORS, SAGINAW VALLEY AREA CHAPTER, Plaintiff,

v.

Lowell W. PERRY, Director of Department of Labor, State of Michigan, Defendant,

and

Michigan State Building and Construction Trades Council, AFL–CIO, Intervenor.

No. 93–CV–10016–BC.

United States District Court, E.D. Michigan, Northern Division.

Nov. 21, 1994.

---

**1242**

David J. Masud, Saginaw, MI, for plaintiff.

Christine A. Derdarian, Gregory T. Taylor, Asst. Attys. Gen., Lansing, MI, for defendant.

Donald J. Prebenda, John Canzano, Southfield, MI, Terry R. Yellig, Sherman Dunn Cohen, Washington, DC, for intervenor.

### MEMORANDUM OPINION AND ORDER

CLELAND, District Judge.

### I. Introduction

This case is before the court on Associated Builders and Contractors' motion for partial summary judgment, which argues that the Employee Retirement Income Security Act of 1974 ("ERISA") preempts the Michigan Prevailing Wage Act, M.C.L. § 408.551 *et. seq.* Both Defendant Lowell W. Perry and Intervenor Michigan State Building and Construction Trades Council, AFL–CIO have responded to the motion, and replies thereto have been filed. Oral argument was held before this court on July 7, 1994. For the reasons stated herein,

IT IS ORDERED that the motion for partial summary judgment is granted.

### II. Background

Plaintiff Associated Builders and Contractors, Saginaw Valley Chapter ("ABC"), alleges that enforcement of the Michigan Prevailing Wage Act ("Act"), M.C.L. § 408.551 *et seq.,* is preempted by ERISA, 29 U.S.C. § 1001 *et seq.*[1] Defendant Lowell W. Perry is the Director of the Michigan Department of Labor ("MDOL"), which is the state agency charged with enforcing the Act as well as the policies and procedures established by it. The intervenor is the Michigan State Building and Construction Trades Council, AFL–CIO ("Council" or "Intervenor"), a voluntary unincorporated association and a labor organization whose membership is comprised of various labor unions representing building and construction trade workers in the State of Michigan.

---

1. In addition to its claims of ERISA preemption, ABC asserts that the Act is preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.,* and further that enforcement of the Act infringes upon its rights protect- ed under Article I, Sec. 10, Cl. 1, the Fifth Amendment, and the Fourteenth Amendment to the United States Constitution. The only issue before this court on Plaintiff's motion for partial summary judgment is ERISA preemption.

The Act essentially requires non-union construction companies to pay union wages (designated the "prevailing wage" in the statute) when working on projects financed in any part by the state. Stipulation of Facts, ("SOF") 7.[2] The prevailing wage is determined by MDOL and includes the value of fringe benefits, such as health and welfare benefits, vacation benefits, pension plans and apprenticeship training programs. (SOF 29). Section 4 of the Act provides as follows:

> The commissioner shall establish prevailing wages and fringe benefits at the same rate that prevails on projects of a similar character in the locality under collective agreements or understandings between bona fide organizations of construction mechanics and their employers.

M.C.L. § 408.554; (SOF 8).

The MDOL determines the required prevailing rates for wages and fringe benefits by sending survey requests to local construction unions throughout the state. (SOF 15). The surveys ask each union to list the hourly wage and fringe benefits rates, including benefits covered by ERISA. The MDOL relies exclusively upon the reported union information to establish the prevailing wage and fringe benefit requirements on state-funded projects. (SOF 30). The Act's adoption of local union agreement rates as the prevailing rates necessarily results in the incorporation of the local union job classification system. (SOF 16). Virtually all collective bargaining agreements categorize the construction work force by union trade jurisdiction, and further subdivide employees by job classification. For example, an equipment operator (engineer) working in Bay City on a fork truck with a 19–foot lift earns a combined rate (wages plus benefits) of $24.00 per hour while an equipment operator on the same project using a fork truck with a 21–foot lift must be paid $25.92 per hour. (SOF 30). ABC employers generally do not use a contractual job classification system; they use a more flexible system, in which employees perform work which crosses several union job classifications. As a result, when ABC employers work on prevailing wage projects, they must alter their procedures and closely monitor each specific task performed to assure that each employee is compensated at the proper state-mandated wage and fringe benefit rate applicable to each task. ABC employers can avoid this administrative scheme and accompanying close monitoring only by paying the highest prevailing rate for all hours worked during the course of a day.

The MDOL has established detailed policies and procedures for enforcement of the Act. The MDOL's enforcement scheme is applicable to all construction employers, but the Act specifically exempts those employers who are already bound by union agreements to compensate their employees at the prevailing local rates. M.C.L. § 408.552. Thus, ABC argues, the enforcement policies and procedures are enforced almost exclusively against non-union employers.

The MDOL's enforcement scheme creates several on-going administrative requirements for construction employers working on covered projects. For example, on each project, employers who do not normally pay the prevailing union wage and fringe benefit rates must enter into a binding contract assuring the state that their employees' wage and

---

**2.** M.C.L. § 408.552 (Contracts for state projects; provision as to minimum wage rates; exception) provides:

> Sec. 2. Every contract executed between a contracting agent and a successful bidder as contractor and entered into pursuant to advertisement and invitation to bid for a state project which requires or involves the employment of construction mechanics, other than those subject to the jurisdiction of the state civil service commission, and which is sponsored or financed in whole or in part by the state shall contain an express term that the rates of wages and fringe benefits to be paid to each class of mechanics by the bidder and all of his subcontractors, shall be not less than the wage and fringe benefit rates prevailing in the locality in which the work is to be performed. Contracts on state projects which contain provisions requiring the payment of prevailing wages as determined by the United States secretary of labor pursuant to the federal Davis–Bacon [A]ct (United States Code, Title 40, section 276(a), *et seq.*) or which contain minimum wage schedules which are the same as prevailing wages in the locality as determined by collective bargaining agreements or understandings between bona fide organizations of construction mechanics and their employers are exempt from the provisions of this act.

fringe benefit rates will be altered for the duration of the project to comply with the Act's requirements. M.C.L. § 408.552; (SOF 7). Additionally, an hourly calculation is required by the MDOL if the employer wishes to obtain credit for existing fringe benefits paid on an other-than-hourly basis toward the prevailing fringe benefits obligation. (SOF 33). ABC argues that its employers are thus forced to change from the annual or monthly method they normally use to calculate employee fringe benefit costs to the fluctuating hourly basis generally found in union collective bargaining agreements. Furthermore, the MDOL applies an "excess benefits cap," which precludes employers from receiving credit for any fringe benefits that exceed the prevailing union fringe benefit rates. (SOF 25). Finally, pursuant to the Act and the policies enforcing it, contracting employers are required to maintain "accurate records showing the name and occupation of and actual wages and benefits paid to each construction mechanic employed by them in connection with [a contract for a state project,]" M.C.L. § 408.555, and, further, to make contributions or costs for fringe benefits "in writing." *MDOL's Wage Hour Administration Policy*, C 3.04(1). Contracting employers are also required to post, at the construction site, a copy of all prevailing wage and fringe benefit rates. M.C.L. § 408.555. Persons or corporations found to have violated the administrative requirements described above are guilty of a misdemeanor, punishable by up to 90 days in prison. M.C.L. § 408.557; (SOF 11).

### III. Standard

■ To grant a motion for summary judgment, the court must find that the pleadings, together with the depositions, interrogatories and affidavits on file, establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A party seeking summary judgment bears the initial burdens of specifying the basis upon which it contends

judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* 325, 106 S.Ct. at 2553. The nonmoving party must thereafter produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

The parties have supplied a stipulated statement of facts, and there is no disputed issue of material fact.

### IV. Discussion

The issue this court must decide is whether the Michigan Prevailing Wage Act, M.C.L. § 408.551 *et seq.*, or any portion thereof, "relates to" employee benefit plans within the meaning of § 514 of ERISA and, if so, whether any exception in ERISA saves those sections from pre-emption.[3] Plaintiff argues that the Act "relates to" employee benefit plans and, therefore, should be preempted, in its entirety, by ERISA. Both Defendant Lowell Perry and Intervenor Michigan State Building and Construction Trades Council, AFL–CIO, argue that the Act does not relate to employee benefit plans and that preemption is inappropriate.

■ The scope of ERISA's preemption clause is governed by the relationship that the state law, or any portion thereof, has to an employee benefit plan. *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 341 (6th Cir.1993). Specifically, ERISA's preemption clause provides that "the provisions of this subchapter ... shall supersede any and all State laws[4] insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Thus, whether any portions of the Act are preempted by

---

3. If the court finds that a part of the Act is preempted by ERISA, it will then be called upon to determine whether or not the preempted portions of the Act are severable from the remainder of the Act.

4. The term "State laws" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

ERISA depends on whether those sections "relate to" one of Plaintiff's employee benefit plans, not on the nature of the Act itself. As consistently stated by the Supreme Court, "the words 'relate to' should be construed expansively: '[a] law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 8, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987) (*quoting Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983)). "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plan, or the effect is only indirect." *Moore*, 8 F.3d at 341 (*quoting Ingersoll–Rand Co.*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990)); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). However, despite the broad scope of the preemption clause, the Supreme Court has also admonished courts to be mindful that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

## A. Excess Benefits Cap Provision

█ In determining whether an employer has met the prevailing wage requirement, MDOL does not credit fringe benefits paid in excess of the fringe benefit component of the prevailing wage requirement. (SOF 25). Specifically, the Department of Labor policy states,

> An excess of the basic hourly rate may be credited towards the fringe benefit package *but excessive fringe benefit payments may not be credited towards the basic hourly rate.*

(MDOL Policies and Procedures Manual, Section 3.03(2), Ex. B of Brief in Support of Plaintiff's Motion for Summary Judgment ("ABC's Brief") (emphasis added)). Although not contained within the Act itself, it is undisputed that the excess benefits cap provision—like the other polices promulgated

and enforced by the MDOL in relation to the Act, has the effect of law. Accordingly, the court construes it, as well as the other relevant MDOL policies discussed herein, as a "State law" within the meaning of ERISA. *See* 29 U.S.C. § 1144(c)(1); *see also* n. 4, *supra.*

█ The court finds that the excess benefits cap provision "relates to" ERISA employee benefits plans and, thus, has been preempted by ERISA. In *Associated Builders & Contractors v. Baca*, 769 F.Supp. 1537 (N.D.Cal.1991), as in the case at bar, the prevailing wage law disallowed an employer who was paying a higher level of benefits from deducting more than the prevailing benefit level in determining wages to be paid to employees. *Id.* 1546. The court ruled that, "[b]y limiting the amount of benefits that could be 'subtracted' from the *per diem* wage calculations, the [prevailing wage] resolutions and the ordinance ... relate to and regulate ERISA plans by discouraging payment of benefits at higher than prevailing levels." *Id.* 1548. *See also General Electric v. Department of Labor*, 891 F.2d 25, 27 (2nd Cir.1989) (New York prevailing wage law preempted by ERISA where employer "received no credit under the statute for its cost of providing benefits which were not deemed to be 'prevailing benefits' by the Commissioner").

Intervenor acknowledges that other courts have held such provisions to "relate to" employee benefit plans, Memorandum of Intervenor–Defendant Michigan State Building and Construction Trades Council, AFL–CIO, in Opposition to Plaintiff Saginaw ABC's Motion for Summary Judgment ("Intervenor's Resp.") 13, but argues that the resolution should be different in the instant case because, "there is no evidence in the record which indicates that any Saginaw ABC member-employer has ever *reduced its fringe benefit contributions because the applicable prevailing fringe benefit rate was lower than its actual fringe benefit payments.*" *Id.* 14. Such actual injury, however, is not required because "[a] state rule of law may be preempted even though it has no ... direct nexus with ERISA plans if its effect is to dictate or restrict *the choices of ERISA*

*plans* with regard to their benefits, structure, reporting and administration...." *United Wire v. Morristown Memorial Hosp.*, 995 F.2d 1179, 1193 (3rd Cir.1993), *cert. denied*, —— U.S. ——, ——, 114 S.Ct. 382, 383, 126 L.Ed.2d 332, 332 (1993) (emphasis added). The Act has the effect of dictating or restricting the choices of ERISA plans[5] because it discourages employers from providing plan benefits. Employers providing benefits under ERISA plans are required by the Act to undertake additional burdensome administrative calculations. Even more importantly, employers are forbidden to substitute benefits under ERISA plans for cash wages above a certain benefit level. Because the Act discourages benefits under ERISA plans, the Act "relates to" ERISA plans and is thus preempted.

In *Keystone Chapter, Associated Builders and Contractors, Inc. v. Foley*, 37 F.3d 945 (3d Cir.1994), the Court of Appeals for the Third Circuit reversed the Eastern District of Pennsylvania's holding that a prevailing wage act very similar to the one at issue here was preempted. The court recognized that "the benefits component of the prevailing minimum wage plainly has some connection to employee benefits, and thus to benefit plans," but it "found no grounds for preemption here, either." *Id.* 37 F.3d at 960. The court stated, "The benefits component only relates to ERISA plans when an employer decides to satisfy it through contributions to ERISA plans instead of cash payments or contributions to non-ERISA benefits." *Id.*

■ This court finds the Third Circuit's reasoning in *Keystone* unpersuasive. "The preemption clause of ERISA is notable for its breadth," *United Wire*, 995 F.2d at 1191, and the United States Supreme Court has consistently stated that "the words 'relate to' should be construed expansively: '[a] law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 8, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987). In *Keystone*, the Third Circuit essentially said that, although the prevailing wage act does relate to employee benefit plans, it should not be preempted where an employer can evade the act's impact by abolishing its benefit plans and paying only cash wages. The Supreme Court made clear in *District of Columbia v. Greater Washington Board of Trade*, —— U.S. ——, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) that determining whether a statute is preempted is not a two-step process. In *Greater Washington*, the Court distinguished *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), in which the law was found not to be preempted.

> [P]etitioners argue that Section 514(a) should be construed to require a two-step analysis: if the state law 'relate[s] to' an ERISA-covered plan, it may still survive pre-emption if employers could comply with the law through separately administered plans exempt under Section 4(b).
>
> * * * * * *
>
> As we have explained, the Disability Benefits Law upheld in *Shaw*—though mandating the creation of a 'welfare plan' as defined in ERISA—did not relate to a welfare plan subject to ERISA regulation. Section 2(c)(2) does, and that is the end of the matter. We cannot engraft a two-step analysis onto a one-step statute.

*Greater Washington*, —— U.S. at ——, 113 S.Ct. at 585. The *Keystone* court did precisely what the Supreme Court stated it could not do in *Greater Washington:* It engrafted a two-step analysis onto a one-step statute, first finding that the benefits component of the prevailing wage act had "some connection" to (i.e., was related to) employee benefit plans, then finding no preemption because employers could comply with the law by not paying any benefits if they paid a sufficiently high cash wage. This court rejects the *Keystone* court's two-step analysis.

**B. Ongoing Administrative Requirements**

■ The Act relates to ERISA plans because it necessitates an ongoing administrative scheme to regulate the level of fringe

---

5. It is undisputed that at least one of ABC's members maintains an "employee benefit welfare plan," 3(1), 29 U.S.C. § 1002(1), which qualifies as an "employee benefit plan" under ERISA. *See* 3(3) of ERISA, 29 U.S.C. § 1002(3).

benefits provided under ERISA-covered fringe benefit plans. MDOL directly regulates the terms of ERISA plans by enforcing reporting and disclosure requirements, establishing rules for the calculation of benefits to be paid, and imposing remedies for alleged misconduct arising from the administration of plans. The rate survey form utilized by MDOL to determine the prevailing rates of wages and fringe benefits in each Michigan locality requires the employer to provide information concerning wages, health and welfare benefits, vacation benefits, pension plans, apprentice training funds and apprentice to journey worker job-site ratios. (SOF 6).

In *Associated Builders v. Baca,* 769 F.Supp. 1537 (N.D.Cal.1991), the district court considered prevailing wage regulations which required employers to pay the general prevailing *per diem* wages as determined by the California Department of Industrial and Labor Relations. Similar to the instant Act, wages were calculated by adding the monetary value of prevailing benefits to the monetary wage base. *Per diem* wages were required to equal the sum of prevailing wages and benefits, less any employer payments made for employee benefits. *Id.* 1546. The court distinguished the facts of its case from those before the Supreme Court in *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). In *Fort Halifax,* the Court held that, under ERISA, the term "plan" did not include Maine's one-time employee severance payment statute, which required no administrative scheme whatsoever and called on the employer "[t]o do little more than write a check." *Id.* at 12, 107 S.Ct. at 2217. The *Baca* court determined that *Fort Halifax* was inapposite because, unlike in *Fort Halifax:*

> The [*Baca*] employers would be forced to implement an administrative scheme to calculate on a regular basis the wages and benefits paid to individual workers on projects covered by the [prevailing wage laws]. Those contractors will be required to determine the cash equivalent of the benefits provided. *At a minimum, employers will be forced to calculate wages and benefits on covered projects separately*

*from other projects, creating an ongoing administrative system.*

*Baca,* 769 F.Supp. at 1547. (emphasis added). Accordingly, the court held that *Fort Halifax* was distinguishable and, further, that the ongoing administrative burdens imposed by the prevailing wage acts fell within the parameters of an ERISA plan. *Id.* 769 F.Supp. at 1547.

Intervenor argues that *Baca* should not be applied because: 1) it misconstrued *Fort Halifax* and, as a result, misapplied its holding (Intervenor's Resp. 16), and 2) *Baca* is distinguishable from the instant case because the Michigan Act's "administrative scheme" is required merely for wages (and not fringe benefits). This court rejects Intervenor's arguments.

Intervenor's first argument is without merit as it misconstrues the Supreme Court's holding in *Fort Halifax.* Intervenor argues that, "although the Michigan Act refers to 'fringe *benefits* ' and 'fringe *benefit rates,*' it does not expressly—as is required according to Intervenor—single out or specifically mention ERISA *plans* of any kind." (Intervenor's Resp. 8) (emphasis added). Intervenor relies on the statement in Fort Halifax, "Given the basic difference between a 'benefit' and a 'plan,' Congress' choice of language is significant in its preemption of only the latter." (Intervenor's Response 9, *quoting Fort Halifax,* 482 U.S. at 8, 107 S.Ct. at 2215). The court finds unpersuasive Intervenor's attempt to redefine the issue. The *Fort Halifax* court was concerned with whether Maine's one-time employee severance pay statute itself constituted the operation of a benefit plan. *Id.* at 12, 107 S.Ct. at 2217. In the instant case, unlike in *Fort Halifax,* the salient inquiry is not—as Intervenor maintains—whether the administrative requirements imposed by the Michigan Act constitute a "plan" under ERISA, but whether those requirements "relate to" an ERISA plan and are thus preempted by ERISA. Even though the Michigan Act itself cannot be construed as "establishing, or requiring an employer to maintain, an employee benefit

plan," [6] *id.*, the requirements, as well as the Act itself, are preempted if the "effect [of either] is to dictate or restrict the choices of ERISA plans with regard to their benefits, structure, reporting and administration, or if allowing states [to impose such requirements or enforce such an act] would impair the ability of a plan to function simultaneously in a number of states." *United Wire v. Morristown Memorial Hosp.*, 995 F.2d 1179, 1193 (3rd Cir.1993), *cert. denied*, — U.S. —, —, 114 S.Ct. 382, 383, 126 L.Ed.2d 332, 332 (1993) (footnote omitted). Intervenor's reliance on *Fort Halifax* is thus entirely misplaced.

Intervenor's second argument; i.e., that this case differs from *Baca* in that the Michigan administrative scheme is required only for wages (and not fringe benefit plans) is also without merit. The Act does impose administrative burdens on employers that dictate the reporting and administrative requirements of ERISA plans. Specifically, the Act requires contractors and subcontractors to keep accurate records of the name, occupation, and actual wages and fringe benefits paid to each construction mechanic employed on each prevailing wage project. This record must be available for inspection by the contracting agent and the Department of Labor. M.C.L. § 408.555. The court finds that this requirement "relates to" an ERISA plan (and is therefore preempted by ERISA) because it dictates and restricts the choices of ERISA plans with regard to reporting and administration. *United Wire*, 995 F.2d at 1193 (a state rule of law may be preempted if its effect is to dictate or restrict the choices of ERISA plans with regard to reporting and administration); *see also General Electric v. Dept. of Labor*, 891 F.2d 25, 29 (2nd Cir.1989), *cert. denied* 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990) (prevailing wage statute "relates to" ERISA plan

when employer was required to keep, and on request file with the state, sworn schedules of benefits and wages and to make its books and records pertaining to wages, benefits and hours of labor available for inspection by a state fiscal officer).

Another of the Act's requirements is that employers submit their fringe benefit plans "in writing" if they wish to receive credit for those plans toward the "prevailing" fringe benefit obligation. M.C.L. § 408.555; *MDOL's Wage Hour Administration Policy* 3.04(1). This requirement is stricter than the minimum requirement utilized by federal courts to determine the existence of an ERISA plan. In fact, it is settled in this circuit that, irrespective of whether the practice is put into a "writing," an ERISA benefit plan exists as long as the surrounding circumstances demonstrate an ongoing practice. *Fugarino v. Hartford Life & Accident Ins. Co.*, 969 F.2d 178, 185 (6th Cir.1992), *cert. denied* — U.S. —, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993) ("ERISA does not require a formal, written plan") (*citing Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982)). This court holds that the Michigan Prevailing Wage Act's writing requirement is preempted because its effect is to dictate or restrict the choices of ERISA plans with respect to reporting and administration.

In addition, employers who fall within the Michigan Prevailing Wage Act are required to calculate the wages and benefits paid on an other-than-hourly basis toward the prevailing fringe benefit obligation.[7] The effect of this requirement is also to dictate the reporting and administration of ERISA plans. Such a requirement "relates to" an ERISA plan and is therefore preempted by ERISA. *See Baca*, 769 F.Supp. at 1547 (complex calculations required to determine

---

**6.** It is undisputed that the Act does not require the establishment of any fringe benefit program or plan. (SOF 12)

**7.** The Act requires Plaintiff's members to divide their annual or monthly cost for each fringe benefit by 2,080 or 172 hours, respectively, to determine an hourly rate which may be credited toward their hourly "prevailing" benefit rate obligation. (SOF 33); (ABC's Brief 11–12); and (ABC Exs. K & L (investigations by MDOL of

employers for allegedly failing to use the 2,080 or 172 hour presumption in the calculation of credit for prevailing benefit rate obligation)). The fringe benefit calculation is made even more complex and burdensome by the MDOL's policy of requiring employers to alter the compensation rates of individual employees each time an employee is assigned to a different job classification. (SOF 31); (ABC's Brief 12).

the prevailing base wage that must be paid "related to" ERISA plan).[8]

In short, the Michigan Prevailing Wage Act directly regulates—and therefore "relates to"—the terms of ERISA plans by enforcing reporting and disclosure requirements, establishing rules for the calculation of benefits to be paid, and imposing remedies for alleged misconduct arising from the administration of plans.[9] These provisions of the Act (and policies enforcing the Act) are preempted by ERISA.

## C. Conflicting Requirements

■ The administrative requirements imposed by the Act also impermissibly permit an employer's administrative scheme to be subject to conflicting requirements.

This point was emphasized in *Shaw* [*v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)] where we said with respect to another form of State regulation: "Obligating the employer to satisfy the varied and perhaps conflicting requirements of particular state fair employment laws ... would make administration of a nationwide plan more difficult [ ]. Such a situation would produce considerable inefficiencies, which the employer might choose to offset by lowering benefit levels. As the Court in *Shaw* indicated, '*ERISA's comprehensive preemption of state law was meant to minimize this sort of interference with the administration of employee benefit plans,*' *ibid.*, *so that employers would not have to 'administer their plans differently in each State in which they have employees.*' *Id.*, at 105[, 103 S.Ct. at 2904]. . . .

*Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 10, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987) (emphasis added). In the instant case, various states could—under the defendant's ruling—enact differing prevailing wage laws with dissimilar administrative requirements. Allowing such laws to stand would "impair the ability of a[n ERISA] plan to function simultaneously in a number of states." *Unit-*

ed Wire v. Morristown Memorial Hosp., 995 F.2d 1179, 1193 (3d Cir.1993), cert. denied, — U.S. ——, ——, 114 S.Ct. 382, 383, 126 L.Ed.2d 332, 332 (1993); see also Associated Builders & Contractors v. Baca, 769 F.Supp. 1537, 1548 (N.D.Cal.1991) (effect of prevailing wage act was to discourage employers from paying benefits at a level other than established as prevailing. "Not only does this directly implicate Congress' desire to avoid a patchwork of state regulation, it also imposes differing requirements on employers within a single state or even a single locality"); but see WSB Electric, Inc. v. Curry, 1994 WL 446039 (N.D.Cal. Aug. 11, 1994). This court finds that the inconsistency ·of regulations which the Act could bestow upon employers "is within the preemptive intent of Congress to assure that ERISA plans are governed by a single set of federal regulations." Baca, 769 F.Supp. at 1548.

## D. Reference to ERISA Plans

■ Section 3.04(1) of *MDOL's Wage Hour Administration Policy* is also preempted because it refers to an ERISA plan. Specifically, section 3.04(1) validates contributions for fringe benefits only "if the payments are communicated in writing to the construction mechanics *and are pursuant to an identified fund, plan, or program.*" Thus, the statute "refers to ... benefit plans regulated by ERISA and on that basis alone is preempted." *District of Columbia v. Greater Washington Board of Trade*, — U.S. ——, ——, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992); see also Baca, 769 F.Supp. at 1547 (the definition of per diem wages in the prevailing wage statute necessitates reference to, and calculation of, employer contributions to employee benefit plans. Such a requirement is preempted by ERISA); but see Associated Builders and Contractors v. Curry, 797 F.Supp. 1528, 1537 (N.D.Cal.1992) (disagreeing with Baca and ruling that "[t]he fact that prevailing wage levels are calculated in part by reference to the value of prevailing benefits does not

---

8. The court recognizes that *Baca* was recently criticized in *WSB Electric, Inc. v. Curry*, 1994 WL 446039 (N.D.Cal. Aug. 11, 1994), but finds *Baca* more persuasive.

9. M.C.L. § 408.557 states that anyone who violates the provisions of the Act is guilty of a misdemeanor.

mean that the prevailing wage statutes 'relate to' ERISA benefit plans....") and *WSB Electric, Inc. v. Curry,* 1994 WL 446039 (N.D.Cal. Aug. 11, 1994).

In *District of Columbia v. Greater Washington Board of Trade,* —— U.S. ——, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), the Court considered an ERISA preemption challenge to a District of Columbia statute that required employers who provided health insurance for their employees to provide coverage "equivalent to the existing health insurance coverage" to injured employees eligible for workers' compensation benefits. *Id.* at ——, 113 S.Ct. at 582, 121 L.Ed.2d at 519. The "existing health insurance coverage" referred to in the act was a welfare benefit plan under ERISA. The Court ruled that the statute "refers to welfare benefit plans regulated by ERISA and on that basis alone is preempted." *Id.* at ——, 113 S.Ct. at 583, 121 L.Ed.2d at 520.

Like the statute in *Washington Trade Board,* the Michigan Department of Labor's "Prevailing Wage Survey" utilizes existing ERISA fringe benefits as an indicator for the "prevailing" fringe benefits required under the Act. In addition, the survey specifically *refers* to plans regulated by ERISA as evidenced by its requests for hourly contribution rates to individual ERISA employee benefit plans, including health and welfare, vacation, pension and apprentice training programs. Intervenor vehemently argues that "[t]he Act does *not* ... make reference to and functions irrespective of the existence of ERISA employee benefit plans." (Intervenor's Resp. 7, 8) (emphasis added). But there is no question that the survey specifically requests the hourly contribution to various employee benefit plans. See ABC's Brief, Survey, Ex. D, (questions 9a–10 asking for fringe benefit cost/contributions on health

and welfare, vacation, pension, and training fund, and other). In support of its argument that the survey does not make reference to any ERISA plan, Intervenor relies on paragraph 12 of the Stipulation of Facts which states that "the Act does not require the establishment of any fringe benefit program or plan." This stipulated fact, while it is to be accepted as true, does not shed light on the salient issue of whether the Act refers to any plan regulated by ERISA. Intervenor also attempts to rely on the Supreme Court's decision in *Fort Halifax,* arguing that, although the Act refers to "fringe benefits" and "fringe benefit rates," it does not refer to any ERISA *plan.* (Intervenor's Resp. 8). This argument is spurious as the *Fort Halifax* Court was merely describing what it takes—some minimal, ongoing administrative scheme or practice—to make a plan a plan. The Intervenor does not argue that the individual plans referenced by the survey fall short of the administrative degree required for them to be considered employee benefit plans under ERISA. *See Simas v. Quaker Fabric Corp. of Fall River,* 6 F.3d 849, 853 (1st Cir.1993) (whether or not a statute's administrative burdens amount to a "plan" under ERISA "is a matter of degrees"). Accordingly, the Intervenor's argument is without merit. The fringe benefit cost/contribution portions of the Michigan Prevailing Wage Survey impose requirements by referring to ERISA benefit plans. Accordingly, those sections of the survey are preempted by ERISA.

**E. Apprenticeship Requirements**

■■■ ABC further argues that, insofar as the Michigan Prevailing Wage Act regulates apprenticeship training programs, it is preempted because such regulations "relate to" ABC members' ERISA plans.[10] (ABC's

10. To determine if there is a plan within under ERISA, the court must determine "whether, from the surrounding circumstances, a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Fugarino v. Hartford Life & Accident Ins. Co.,* 969 F.2d 178, 185 (6th Cir.1992) *cert. denied* —— U.S. ——, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993) (citation omitted). In *Associated Builders & Contractors v. Perry,* 817 F.Supp. 49 (E.D.Mich.1992), Defen-

dant Lowell Perry conceded that "the apprentices employed by plaintiff contractors and trained by ABC participated in an 'apprenticeship program' governed by ERISA." *Id.* at 51. In the instant case, the defendant takes a contrary position, arguing, along with Intervenor, that there is at least a material issue of fact as to whether any ABC employer maintains an apprenticeship or training plan that qualifies as an employee benefit plan under ERISA.

Brief 19–25). Specifically, ABC contends that the Act is preempted because it mandates job-site ratios of apprentices and journey persons on public works projects (*id.*, 20–22) and because it limits recognition of "apprentices" who may be paid less than the otherwise applicable prevailing wage and fringe benefits to those who are registered with the United States Department of Labor Bureau of Apprenticeship and Training ("BAT"). *Id.* 22–25.

## 1. The Apprentice Job Site Ratio Requirement

The current *MDOL Policy and Procedure Manual for Enforcement* of the Act contains the following apprentice job site ratio requirement:

POLICY

(5) The allowable ratio of apprentices to journey persons on a state project in any craft classification shall not be greater than the ratio permitted in the collective bargaining agreement whose jurisdiction includes the project site for the trade classification.

(ABC's Brief, Ex. B at C 4.08(5)). In *Associated Builders & Contractors v. Perry*, 817 F.Supp. 49 (E.D.Mich.1992), this court considered an apprenticeship ratio requirement within the Michigan Electrical Administrative Act, M.C.L. § 338.881 *et seq.*, which restricted the use of apprentice electricians to no more than one apprentice for each licensed electrician on any given job site. *Id.* at 51.

In effect, the ratio requirement mandates a minimum benefit level by requiring employers to provide a minimum number of teachers per student at each jobsite. The ratio requirement also has the effect of limiting the number of apprentices who may participate in an employer's training program.

Defendant and Intervenor concede that at least one ABC member/employer (Wolgast) maintains an apprenticeship plan with identifiable financing and source of benefits; the dispute concerns the intended beneficiaries and procedures for receiving benefits. As to the ascertainability of the intended beneficiaries, Mr. Wolgast testified that the Wolgast apprenticeship plan is available to all of his employees. (Wolgast Dep. 24–25).

*Id.* at 52. This court found that the ratio rule "regulated, and was clearly intended to regulate, certain terms and conditions of apprenticeship programs [governed by ERISA] by establishing the manner in which employers can train and employ ... journeymen and apprentice[s]...." *Id.* (*quoting Boise Cascade Corp. v. Peterson*, 939 F.2d 632 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3014, 120 L.Ed.2d 887 (1992)). Accordingly, the court ruled that the Michigan ratio requirement "related to" plaintiffs' apprenticeship programs and was, therefore, preempted by ERISA.

In the instant case, Defendant and Intervenor do not attempt to distinguish the ratio requirement within the Michigan Prevailing Wage Act from that contained within the Michigan Electrical Administrative Act; they instead maintain that the issue is moot because the MDOL no longer enforces Section 4.08(5). See SOF 27; Intervenor's Resp. 21, n. 7; Brief of Lowell W. Perry, Director of Michigan Department of Labor Opposing Plaintiff's Motion for Summary Judgment ("Def's Resp."), Affidavit ("Aff.") Dankert, par. 5. An Opinion by Michigan's Attorney General also states that the MDOL is "not authorized ... to establish a permissible ratio of apprentices to journey persons on construction projects which are subject to [the Michigan Prevailing Wage] act." (ABC's Brief 21).

■■■■■ The court finds that this issue is not moot and that the ratio requirement found at section 4.08(5) of the *MDOL Policy and Procedure Manual for Enforcement* is preempted by ERISA pursuant to *Associated Builders & Contractors v. Perry*, 817 F.Supp. 49 (E.D.Mich.1992), and the cases cited therein. Voluntary cessation is a well-recognized exception to the mootness doctrine. "A case is not to be dismissed as moot if the defendant voluntarily ceases the alleg-

Furthermore, the plan itself specifically outlines the procedures for application and receiving benefits. (See pamphlet, "Apprenticeship Program and Standards of Apprenticeship," 6–15). Thus, there being no evidence to the contrary, the court finds that at least one of ABC's members (Wolgast) maintains an apprenticeship plan that qualifies as an employee benefit plan under ERISA. *See* 29 U.S.C. §§ 1002(1) and (3).

edly improper behavior but is free to return to it at any time." Chemerinsky, *Federal Jurisdiction*, 118 (1989). In *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Florida,* —— U.S. ——, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), the United States Supreme Court noted, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id.* at ——, 113 S.Ct. at 2301 (citations omitted). Thus, the issue is not moot, and this court determines that the ratio requirement is preempted.

## 2. The Apprentice Qualification Requirement

■ The current *MDOL Policy and Procedure Manual for Enforcement* of the Prevailing Wage Act contains the following apprentice qualification requirement:

POLICY

(4) A recognized apprentice is a construction mechanic who is registered as an apprentice with the Bureau of Apprenticeship and Training [BAT], Employment and Training Administration, U.S. Department of Labor.

. . . .

Any construction mechanic listed on a payroll at the apprentice rate who is not registered [with BAT] as stated above shall not be paid less than the applicable [journeyman] wage rate on the prevailing wage rate schedule for that locality covering the work performed.

(ABC's Brief, Ex. B), *Wage Hour Administration Policy Concerning Disputes Regarding Classification,* C 4.08(5) and 4.08–3. ABC contends that many of its members train their apprentices in their own training programs, which are not registered with the BAT. (ABC's Brief 23). Pursuant to the above regulations, these members are prohibited from compensating apprentices in their unregistered programs at the significantly reduced prevailing apprentice rates, but must instead pay the (much higher) prevailing journeyman rate. *Id.* Consequently, this provision within the Act—according to Plaintiff—strongly discourages employer

contributions to and sponsorship of non-registered apprentice training programs.

In *Perry,* this court considered an "equivalency requirement" which forced all apprentice electricians to participate in an apprentice training program that was approved by the MDOL and adhered to standards equivalent to those adopted by the United States Department of Labor, Bureau of Apprenticeship and Training. *Id.* at 51. This court ruled that this requirement:

... [G]oes even farther [than the ratio requirement] toward establishing minimum benefit levels and restricting an employer's ability to establish the manner in which to train apprentices. Accordingly, ... the equivalency requirement also relates to plaintiffs' [ERISA-covered] apprenticeship programs.

*Id.* at 52. After this court's decision in *Perry,* the Tenth Circuit considered a ruling by the Oklahoma Commissioner of Labor under Oklahoma's prevailing wage law that an elevator construction helper on state public works projects must be enrolled in a certified Bureau of Apprenticeship Training program in order to receive the rate of pay for apprentices and trainees rather the rate of pay for mechanics. *See National Elevator Industry, Inc. v. Calhoon,* 957 F.2d 1555 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 406, 121 L.Ed.2d 331 (1992). In ruling that the Commissioner's Opinion (which was deemed to be a "state law" under ERISA) was preempted by ERISA, the court stated:

If a state is permitted to use a prevailing wage scheme to single out and favor certain ERISA plans over other ERISA plans, the potential for abuse is great—a state could avoid ERISA's preemption provision and covertly disturb or alter ERISA's plans. We believe that defendants' ruling would discourage non-BAT approved ERISA training programs and encourage changes to [plaintiffs' employee benefit plan].

*Id.* 957 F.2d at 1561. Intervenor attempts to distinguish *National Elevator* on the basis that that case involved a Commissioner's "ruling" and "not the prevailing wage law itself." (Intervenor's Resp. 22). This is an-

other in a series of what the court perceives as red herrings dragged across the court's path by the intervenor. As stated, the Oklahoma Commissioner's ruling was determined by the *National Elevator* court to be a "state law" under ERISA. *Id.* at 1557 ("We note that defendants' ruling is clearly "State law" for purpose of section 1144(a)"). There is no principled way that the facts in *National Elevator* can be distinguished from those in the instant case.

Intervenor further argues that even if the BAT qualification requirements within the Michigan Act are found to relate to ABC members' apprenticeship programs, the Michigan law is saved from preemption by section 514(d) of ERISA. That section, known as the "savings clause," provides:

Nothing in this chapter shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States ... or any rule or regulation issued under any such law.

29 U.S.C. section 1144(d). Specifically, Intervenor relies on the Fitzgerald Act, 29 U.S.C. section 50 *et seq.*, and the regulations issued thereunder by the Secretary of Labor. See 29 C.F.R. Part 29. As ABC correctly points out, this court considered and rejected this identical argument in *Perry*, 817 F.Supp. at 49. Intervenor suggests that ABC's reliance on this court's holding in *Perry* is "misplaced." (Intervenor's Resp. 26). The significant distinction between the instant case and *Perry*, according to the Intervenor, is that—unlike in the instant case—the Michigan Electrical Administrative Act (M.C.L. § 338.881, *et seq.*) "*required* all apprentice electricians to participate in an apprenticeship training program approved by MDOL which adhered to standards equivalent to those adopted by the BAT." (Intervenor's Resp. 26).

Intervenor's argument (which is not asserted by defendant Lowell Perry), is without merit. The distinction between the instant case and *Perry* is not relevant to the inquiry of whether the Fitzgerald Act "saves" the Michigan Prevailing Wage Act. This pronouncement is supported by the Tenth Circuit's holding in *National Elevator*, 957 F.2d 1555, where—as in the case *sub judice*—employers were not "required," *id.* at 1559, to enroll their apprentices in BAT

programs, but were nevertheless penalized for failing to do so. In rejecting the identical Fitzgerald Act argument presented by Intervenor, the court stated:

Section 50 [of the Fitzgerald Act] merely seeks to facilitate development of apprenticeship programs—it does not mandate apprenticeship programs or seek to discourage other training programs. We agree with the Ninth Circuit that 'the regulations relate only to eligibility for federal registration. Neither they nor the Act [section 50] contemplate enforcement mechanisms....' [ ] Therefore [the ruling by the Oklahoma Commissioner that helpers working on state public works projects must be paid at the wage rate required for mechanics unless the helpers are participating in a BAT approved apprenticeship program] cannot be said to function as an enforcement mechanism for section 50. *We decline to make section 1144(d) into an expansive savings clause; we hold that the savings clause of section 1144(d) does not save the defendants' ruling from ERISA preemption.*

*Id.* 957 F.2d at 1562 (emphasis added) (citation and footnote omitted).

For the reasons stated by the Tenth Circuit in *National Elevator*, as well as for the reasons stated by this court in *Perry*, section 1144(d) of ERISA does not "save" from preemption any portion of the Michigan Prevailing Wage Act. Accordingly, this court holds that ERISA preempts the MDOL policies enforcing the Act which recognize only BAT registered apprentices, *Wage Hour Administration Policy Concerning Disputes Regarding Classification*, C 4.08(5), and which require that helpers working on state public works projects be paid at the wage rate required for journeymen, unless those helpers are participating in a BAT approved apprenticeship program. *Id.* 4.08–3

## F. Severability

The fact that certain portions of the Michigan Prevailing Wage Act "relate to" Plaintiff's ERISA plans does not mean, *a fortiori*, that the Act is preempted in its entirety. As stated, section 514 of ERISA preempts state laws "*only insofar* as they relate to plans covered by ERISA." *See Shaw v. Delta Air Lines*, 463 U.S. 85, n. 17,

103 S.Ct. 2890, n. 17, 77 L.Ed.2d 490 (1983) (emphasis added). Accordingly, those portions of the Michigan Prevailing Wage Act which do not "relate to" an ERISA plan are not preempted by ERISA. However, because the court has ruled that several portions of the Act (e.g., those portions dealing with prevailing benefits, as well as those portions concerning apprenticeship ratios and requirements) are preempted, the court must determine whether the preempted portions of the Act are severable from the nonpreempted portions or whether such a holding renders the remaining portions of the Act invalid as a whole. *See General Elec. v. New York State Dept. of Labor,* 936 F.2d 1448, 1461 (2nd Cir.1991). ABC contends that the Act should be deemed preempted in its entirety. Both Lowell Perry and Intervenor argue to the contrary.

■■■ The severability of a state statute is to be determined according to state law. *See Doyle v. Suffolk County,* 786 F.2d 523, 526–27 (2nd Cir.1986), *cert. denied,* 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986). Michigan's severability statute provides:

sec. 5. In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:

If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

M.C.L. § 8.5.

■■■ It is well settled that, although a statute may be invalid or unconstitutional in part, the part that is valid will be sustained where it can be separated from that part which is void. *Mathias v. Cramer,* 73 Mich. 5, 40 N.W. 926 (1888). However, the statute enforced after the invalid portion of the act is severed must be reasonable in light of the act as originally drafted. *Caterpillar, Inc. v. Department of Treasury,* 188 Mich.App. 621, 631, 470 N.W.2d 80, *rev'd on other grounds,* 440 Mich. 400, 488 N.W.2d 182 (1991).

Where a statute contains an unconstitutional provision, and another provision which, standing by itself, would be valid, the latter should be given effect if the two are so independent of each other that the court can say that the legislature would have passed the latter even if the former had been omitted. *Attorney General v. Loomis,* 141 Mich. 547, 105 N.W. 4 (1905). However, where they are so interconnected or so dependent one upon the other, that it is apparent that the legislature would not have passed the act, except as a whole, the entire statute must fall. *Id.*

■■■ This court finds that the ERISA-preempted portions of the Michigan Prevailing Wage Act are so interwoven with the non-preempted portions as to render the remainder of the Act invalid in its entirety. Under the Act as written, contractors are required to pay prevailing wages *and* fringe benefits. If this court were to invalidate only those portions of the Act mandating contracting employers to pay prevailing "fringe benefits" (i.e. those portions of the Act which have been held preempted by ERISA), it would leave in its wake a de facto minimum-wage statute governing contractors on state construction projects. All participants appear to agree that such a rule would place bidders who pay prevailing benefits at a competitive disadvantage in bidding on public works projects vis-a-vis bidders who offer no benefits at all. The Michigan Legislature, whose apparent aim in passing the Act was to protect local wage and benefit standards by preventing contractors from basing their bids on wages and benefits lower than those prevailing in the community, would not have countenanced such a result. Accordingly, the court holds that the non-preempted portions of Michigan Prevailing Wage Act are invalidated and that the remainder of the Act is unenforceable in its entirety.

## V. Conclusion

The court finds that aforementioned sections of the Michigan Prevailing Wage Act, as discussed herein, are preempted by ERISA. The court further finds that the preempted portions of the Michigan Prevailing Wage Act are so interwoven with the remainder of the Act as to make severability of those sections impracticable; accordingly,

IT IS ORDERED that the Plaintiff's Motion for Summary Judgment is granted and

IT IS FURTHER ORDERED that the Michigan Prevailing Wage Act is invalid and unenforceable in its entirety.