88 F.3d 788
 65 USLW 2037, 20 Employee Benefits Cas. 1592,
3 Wage & Hour Cas.2d (BNA) 641,
97 Cal. Daily Op. Serv. 5077,
96 Daily Journal D.A.R. 8149,
Pens. Plan Guide P 23922V
 WSB ELECTRIC, INC. and J.R. Roberts Corporation, Plaintiffs-Appellants,
v.
James CURRY, in his official capacity as the Labor
Commissioner of the State of California; Ronald
Rinaldi, Director of Industrial
Relations for the State of
California,
Defendants-Appellees.
J.R. ROBERTS CORPORATION, Plaintiff-Appellant,
v.
James CURRY, Labor Commissioner of the State of California;
Ronald Rinaldi, Director of Industrial Relations
for the State of California, Defendants-Appellees.
 Nos. 94-16613, 94-16646.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 5, 1995.
Decided July 5, 1996.
 
 Mark R. Thierman and George P. Parisotto, Thierman Law Partnership, San Francisco, California, for plaintiffs-appellants.
 John M. Rea, Chief Counsel, Vanessa L. Holton, Asst. Chief Counsel, James D. Fisher, Counsel, Department of Industrial Relations, San Francisco, California, for defendants-appellees.
 Marsha S. Berzon, Altshuler, Berzon, Nussbaum, Berzon & Rubin, San Francisco, California, for intervenor-appellee.
 Appeals from the United States District Court for the Northern District of California; Claudia Wilken, District Judge, Presiding. D.C. Nos. CV-90-00771-CW, CV-90-01109-CW.
 Before: BROWNING, CANBY and HALL, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Appellants WSB Electric and J.R. Roberts are licensed contractors who perform public works contracts in the state of California. They brought suit against the California Department of Industrial Relations ("DIR") and its officers challenging the state's enforcement of its prevailing wage law for public works contracts, Cal. Labor Code § 1770 et seq. They claim that the state law is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") because California's prevailing wage rate is measured by reference to the prevailing cash wage plus the prevailing benefits contributions of employers in a given locality.
 
 
 2
 The district court found that ERISA does not preempt the prevailing wage statute, and appellants filed a timely appeal. We affirm.
 
 
 3
 * This case originally began in 1989, when both contractors filed separate actions to enjoin the DIR from enforcing California's prevailing wage law for state public works projects. The state's prevailing wage law requires that public works contractors pay their employees a minimum wage, called the "prevailing rate of per diem wages." Cal. Labor Code §§ 1771 & 1773. This prevailing wage is determined on a county-by-county basis, and is calculated by adding the basic hourly rate paid to the majority of workers in a particular job classification plus the prevailing cost to employers of fringe benefits provided in that locality. In 1989, DIR enforced the prevailing wage law according to the "line-by-line" method. Under this approach, the total prevailing wages consisted of a base cash wage plus set amounts for specific fringe benefits (i.e., $2.50 per hour for health, $0.50 for pension, etc.). To comply with the law, a public works contractor had to either pay the entire prevailing wage in cash, or pay the base cash wage and receive credit for the balance based on contributions for specific fringe benefits. The employer could not, however, take credit for fringe benefit contributions that exceeded the stated amount for each specific benefit.
 
 
 4
 The district court found that this scheme was preempted by ERISA. Subsequently, the DIR adopted the current system, a "two-tier" approach, and we vacated the district court's decision and remanded for further proceedings as to whether ERISA also preempts the "two-tier" approach. On remand, the district court granted the DIR's motion for summary judgment, holding that ERISA does not preempt the two-tier approach. The contractors appealed, and that is the case before us now.
 
 
 5
 Under the two-tier approach, the employer must pay employees the prevailing wage, and it may do so through a combination of cash and benefits. To calculate the wage, the employer adds the hourly cash wage paid plus the total amount of employer contributions to benefits plans, no longer considering each benefit separately. If this sum falls short of the prevailing wage, then the employer must make up the difference in cash. However, as before, the Labor Code also prescribes a minimum amount of cash wage that must be paid. Therefore, an "excess benefit cap" applies, whereby employers may not credit more than a fixed amount of benefits contributions toward the prevailing wage. If the employer contributes more than the fixed amount for benefits, it is not credited in the prevailing wage calculation and the employer must make up any shortfall in cash.
 
 II
 
 6
 The district court's decision regarding preemption is reviewed de novo. Aloha Airlines, Inc. v. Ahue, 12 F.3d 1498, 1500 (9th Cir.1993). A grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether the district court correctly applied the relevant substantive law. Id. In this case, both sides concede that there are no disputed issues of fact; therefore, the only inquiry is whether the district court correctly applied the substantive law.
 
 
 7
 Congress enacted ERISA, 29 U.S.C. § 1001 et seq., as a comprehensive legislative scheme "to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). By enacting such a broad scheme, Congress also sought to protect employers by "eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." Id. at 99, 103 S.Ct. at 2901. To further this goal of nationwide consistency, Congress included a preemption clause,[1] section 514(a), which is "conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." FMC Corp. v. Holliday, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). ERISA's preemption provision is not without limits, however; we "must presume that Congress did not intend to preempt areas of traditional state regulation." Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).
 
 
 8
 A state law relates to an ERISA employee benefit plan "if it has a connection with or reference to such a plan." Shaw, 463 U.S. at 97, 103 S.Ct. at 2900; New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co., --- U.S. ----, ----, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995). ERISA preempts state laws that relate to employee benefit plans even if they only indirectly affect those plans. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). Nevertheless, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21; Aloha Airlines, Inc. v. Ahue, 12 F.3d 1498, 1504 (9th Cir.1993).
 
 
 9
 * It is well settled that wages are a subject of traditional state concern, and are not included in ERISA's definition of "employee benefit plan." Thus, regulation of wages per se is not within ERISA's coverage. Massachusetts v. Morash, 490 U.S. 107, 118, 109 S.Ct. 1668, 1674-75, 104 L.Ed.2d 98 (1989) (holding that ERISA does not preempt a state law regulating vacation pay).
 
 
 10
 No doubt is cast on this proposition by our recent decision in Dillingham Construction v. County of Sonoma, 57 F.3d 712 (9th Cir.1995), cert. granted, --- U.S. ----, 116 S.Ct. 1415, 134 L.Ed.2d 541 (1996). In Dillingham, the plaintiffs challenged the apprenticeship program provisions of California's prevailing wage law, Cal. Labor Code § 1777.5. We held that a statute regulating wages in an apprenticeship program was preempted by ERISA because the apprenticeship program itself was an employee welfare benefit plan. Id. at 718. Therefore, the prevailing wage law apprenticeship provisions directly "related to" an ERISA plan. Id. at 718-19; see also Inland Empire Chap. of Assoc. General Contractors v. Dear, 77 F.3d 296, (9th Cir.1996) (holding that ERISA preempts Washington's prevailing wage law's apprenticeship provisions for the reasons given in Dillingham ).
 
 
 11
 Here, the prevailing wage law provisions at issue regulate wages generally, not wages that are part of a particular employee benefit plan. The question for decision, then, is whether the statute's effect on employee benefit plans is so attenuated that the statute cannot be said to "relate to" ERISA plans.
 
 B
 
 12
 A state law relates to an ERISA employee benefit plan if it has either "a connection with" or "reference to" such a plan. Shaw, 463 U.S. at 97, 103 S.Ct. at 2900; Travelers, --- U.S. at ----, 115 S.Ct. at 1677 (1995); District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 128-30, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992). Few cases discuss the application of the "reference to" language from the Shaw test, and some courts seem to merge the two prongs. See NYS H.M.O. Conference v. Curiale, 64 F.3d 794, 800 n. 17 (2nd Cir.1995). But in Travelers, the Supreme Court expressly applied a two-pronged analysis, holding first that the statute at issue did not "refer to" ERISA plans, and then concluding that it also did not have a sufficient "connection with" such plans to warrant preemption. Travelers, --- U.S. at ----, 115 S.Ct. at 1677.
 
 
 13
 * The scope of the "reference to" language is open to varying interpretations. Some courts have found that statutes which merely make mention of ERISA plans, or allude to them obliquely, are preempted under this prong of the Shaw test. E.g., Associated Builders & Contractors v. Baca, 769 F.Supp. 1537 (N.D.Cal.1991)[2] (holding that California's prevailing wage law as applied to private construction projects is preempted by ERISA because the prevailing wage rate is calculated in part by referring to the dollar value of benefits paid in the locality), aff'd on other grounds sub nom. Chamber of Commerce v. Bragdon, 64 F.3d 497 (9th Cir.1995) (holding that the NLRA preempts application of California's prevailing wage law to private construction projects, and not reaching the question of ERISA preemption); Associated Builders & Contractors v. Perry, 869 F.Supp. 1239 (E.D.Mich.1994) (holding that Michigan's prevailing wage law, which operated similarly to California's "two-tier" method, was preempted by ERISA).
 
 
 14
 Appellants argue that under Greater Washington the prevailing wage law is preempted because the employer's obligations are measured by reference to ERISA plan benefits. In Greater Washington, the preempted statute expressly referred to an ERISA covered plan--it required all employers who provide employee health insurance coverage, to also provide equivalent coverage for employees receiving worker's compensation benefits. Greater Washington, 506 U.S. at 128-32, 113 S.Ct. at 583-84. This statute referred to ERISA plans in the literal sense, in that it specifically mentioned a covered employee welfare plan (medical coverage). But more importantly, it referred to the level of benefits provided by a covered plan when prescribing the additional coverage required. That is, it imposed an obligation upon an employer that was "measured by reference" to the level of benefit provided by that employer under an ERISA plan. Id. at 128-32, 113 S.Ct. at 583-84. The Court explained that "any state law imposing requirements by reference to such covered programs must yield to ERISA." Id. at 130-31, 113 S.Ct. at 584; see also Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 829-30, 108 S.Ct. 2182, 2185-86, 100 L.Ed.2d 836 (holding that a state garnishment statute that expressly referred to ERISA plans and singled them out for different treatment under the law was preempted).
 
 
 15
 California's prevailing wage rate is measured by reference to prevailing cash wages and prevailing benefit contributions in a locality and, thus, would seem to fall under Greater Washington. Employee benefits and benefit plans are mentioned in the statute and regulations in two different respects. First, the calculation of per diem wages includes "employer payments for health and welfare, pension, vacation, travel time, and subsistence pay." Cal. Labor Code § 1773.1. The regulation defining how the employer determines the amount of credit he can deduct for fringe benefit costs, Cal.Code Regs. tit. 8, § 16200(a)(2)(I), refers to "employer payments," which include "[t]he rate of contribution irrevocably made by a contractor or subcontractor ... pursuant to a fund, plan, or program for the benefit of employees...."[3] Cal.Code Regs. tit. 8, § 16000 (definition of "Employer Payments"). Second, other provisions of the statutory scheme describe the method by which the DIR is to determine the prevailing wage in a particular area. These provisions require the DIR to consider the prevailing level of benefit contributions by employers in a given locality. Cal. Labor Code § 1773; Cal.Code Regs. tit. 8, § 16200; Cal.Code Regs. tit. 8, § 16000 (definition of "Prevailing Rate" and "General Prevailing Rate of Per Diem Wages").
 
 
 16
 The Supreme Court, however, has never found a statute to be preempted simply because its text included the word ERISA or explicitly mentioned a covered employee welfare benefit plan. See NYS H.M.O. Conference, 64 F.3d at 799-800. Although the statutes the Supreme Court has held to be preempted did expressly refer to ERISA plans, they also had some effect on those plans. See, e.g., Greater Washington, 506 U.S. at 129, 113 S.Ct. at 583 (noting that the Court of Appeals had found that the preempted statute "could have a serious impact on the administration and content of the ERISA-covered plan"). Therefore, a statute "refers to" an ERISA plan and is preempted if it mentions or alludes to ERISA plans, and has some effect on the referenced plans. See also Thiokol Corp. v. Roberts, 76 F.3d 751, 759-60 (6th Cir.1996) (holding that a state tax law is not preempted even though it specifically refers to employee benefits plans when defining employee "compensation," and noting that "statutes that refer to ERISA plans are struck down not because of the reference but because of their intended effect" on those plans); NYS H.M.O. Conference, 64 F.3d at 800 ("a state law has a reference to ERISA if its text mentions or alludes to ERISA plans, and if the law affects ERISA plans in some manner").
 
 
 17
 The references to ERISA plans in the California prevailing wage law have no effect on any ERISA plans, but simply take them into account when calculating the cash wage that must be paid. At most, this scheme provides examples of the types of employer contributions to benefits that are included in the wage calculation.[4] The scheme does not force employers to provide any particular employee benefits or plans, to alter their existing plans, or to even provide ERISA plans or employee benefits at all. See Employee Staffing Services, Inc. v. Aubry, 20 F.3d 1038, (9th Cir.1994) ("In the case at bar, unlike Greater Washington, the state law does not tell employers how to write their ERISA plans."). These provisions are enforced regardless of whether the individual employer provides benefits through ERISA plans, or whether the benefit contributions in a given locality are paid to ERISA plans. See Travelers, --- U.S. at ----, 115 S.Ct. at 1677 (holding that a statute did not "refer to" ERISA plans because it operated regardless of whether the medical coverage was secured by an ERISA plan or otherwise).
 
 
 18
 The Third and Eighth Circuits have both held that similar prevailing wage statutes were not preempted by ERISA. In Keystone Chapter of Assoc. Builders v. Foley, 37 F.3d 945 (3d Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995), the Third Circuit rejected the argument that the mere mention of benefits or benefit plans in a statute automatically demands preemption. The court noted that the statute at issue did not premise any employer obligation on the existence of benefits plans, but instead merely took account of such plans if they happened to exist. Keystone, 37 F.3d at 957 (holding that ERISA does not preempt a prevailing wage statute that operates identically to California's current "two-tier" approach); see also Minnesota Chapter of Assoc. Builders v. Minnesota Dept. of Labor, 47 F.3d 975 (8th Cir.1995) (holding that ERISA does not preempt a prevailing wage statute similar to California's, but which may not have an excess benefits cap). The Keystone court distinguished Greater Washington because in that case the statute referred to ERISA plans as the basis for the rights it accorded, whereas in Pennsylvania's prevailing wage statute, which is similar to California's, an ERISA plan benefit is given only as an example of the factors that make up the prevailing wage. Id. at 957 n. 17; Minnesota Chapter, 47 F.3d at 980 ("ERISA does not require 'a state to ignore the existence of ERISA benefits when considering overall remuneration to workers,' and 'a state can set a minimum cash wage, and allow an employer the option of paying part of that in benefits,' without triggering ERISA preemption.") (citation omitted); see also Thiokol, 76 F.3d at 753 & n. 1 (holding that a state tax law is not preempted, even though it bases an employer's tax obligation upon employee compensation, which includes employers' payments to retirement and health benefit plans).
 
 
 19
 California's prevailing wage law is concerned with guaranteeing a minimum cash wage for employees on public works contracts. Furthermore, it takes into account those contractors who provide fringe benefits for their employees. Otherwise, these contractors would be unable to compete effectively for public works contracts against contractors who provide only a cash wage. Although the prevailing rate of per diem wages in a given locality is measured by reference to employers' fringe benefit costs, these costs are calculated without regard to whether they consist of contributions to ERISA plans. Moreover, each individual employer's obligation to pay the prevailing wage does not depend upon the existence or operation of that employer's ERISA plans. Therefore, California's prevailing wage law does not refer to ERISA plans sufficiently for us to find that it is preempted.
 
 2
 
 20
 This court has defined a set of factors to consider when determining whether a state law relates to ERISA plans because it has a "connection with" such plans:
 
 
 21
 (1) Whether the state law regulates the types of benefits of ERISA employee welfare benefit plans;
 
 
 22
 (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law;
 
 
 23
 (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans;
 
 
 24
 (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between an employer and employee.
 
 
 25
 Ahue, 12 F.3d at 1504 (holding that a state law requiring that employers cover the expense of federally mandated physicals for airline pilots is preempted by ERISA).
 
 
 26
 Under the two-tier approach, California's prevailing wage law clearly does not regulate the types of benefits of employee welfare benefit plans; therefore, the first Ahue factor is not implicated.
 
 
 27
 Under Ahue factors (2) and (3) a state law may "relate to" ERISA plans if it requires establishment of a separate employee benefit plan to comply with the law or if it imposes additional administrative requirements for ERISA plans. Ahue, 12 F.3d at 1504. Appellants confuse and combine these two factors when they argue that this statute is preempted because it imposes additional administrative burdens regarding benefits contributions on the employer. Because the two-tier scheme does not impose any additional burden on ERISA plans or require the employer to take any action with regard to those plans, we reject this argument.
 
 
 28
 Relying on Perry and Baca, appellants contend that public works contractors will be required to create a separate administrative scheme in order to: (1) perform ongoing calculations of wages paid and cash equivalents of benefits provided; (2) keep track of the prevailing wage levels in different localities; and (3) maintain detailed payroll records showing hourly wage levels and benefit contributions. See Cal. Labor Code § 1776 for disclosure and reporting requirements. See Perry, 869 F.Supp. at 1248 (holding that similar calculations and reporting requirements would "impair the ability of a plan to function simultaneously in a number of states."); Baca, 769 F.Supp. at 1547 ("employers will be forced to calculate wages and benefits on covered projects separately from other projects, creating an ongoing administrative system").
 
 
 29
 None of these concerns satisfies either Ahue factor (2) or (3). First, nothing in California's scheme requires the establishment of a separate benefit plan in order to comply with the state law. California's statute does not require public works contractors to modify their benefits plans at all. It simply requires that they pay a minimum cash wage, regardless of the level of benefits provided. Employers can comply without adjusting their level of benefits contributions.
 
 
 30
 Furthermore, although the law may cause employers to maintain a separate administrative scheme to keep track of prevailing wage data for public works projects, it does not require that they maintain a separate employee benefit plan. They may choose to do so if they want to ensure that they contribute no more to employee benefits than the maximum credited under the excess benefit cap. But they are not required to do so. If their benefit contributions fall below the prevailing benefit rate, then they can make up the shortfall with cash wages, which would have no effect on their ERISA plans.
 
 
 31
 Admittedly, if employers' benefits contributions exceed the prevailing benefit rate, then they would quite likely adjust their contributions downward to reflect the prevailing rate. In that case, the prevailing wage law would have an incidental impact on ERISA plans. But this impact is indirect, and the choice of amount and type of benefits to provide remains with the private employers.
 
 
 32
 Under Ahue factor (4) the main focus of appellants' argument is that the excess benefits cap of the two-tier scheme discourages employers from making benefits contributions in excess of the prevailing benefit rate, thereby affecting the relationship between the employer and employees. They argue that the excess benefit cap creates an adverse economic impact on public works contractors, which discourages benefits contributions in excess of the cap. However, we have rejected this argument in Employee Staffing Services, Inc. v. Aubry, 20 F.3d 1038 (9th Cir.1994). We held that ERISA did not preempt a state law that required employers to provide separate workers' compensation insurance even if they included coverage for work-related injuries under a comprehensive ERISA plan. The plaintiffs argued that the independent state requirement would have the economic effect of discouraging them from providing "so rich an ERISA plan as they do now." Id. at 1042. We rejected this argument pointing out that "[t]he economic effect of independent state requirements on employers' incentives in drafting ERISA plans should be distinguished from the legal effect of state commands regarding ERISA plans." Id.; Travelers, --- U.S. at ----, 115 S.Ct. at 1679 ("An indirect economic influence ... does not bind plan administrators to any particular choice and thus function as a regulation of an ERISA plan itself"); see also Lane v. Goren, 743 F.2d 1337, 1340 (9th Cir.1984) (holding that California laws prohibiting employment discrimination are not preempted by ERISA, and noting that merely increasing an ERISA plan's operational costs is too tenuous, remote or peripheral an effect to warrant a finding that the law relates to a covered plan). Any requirement that an employer spend a fixed amount on wages would reduce the general funds available for other methods of employee compensation. See Travelers, --- U.S. at ----, 115 S.Ct. at 1679 ("Even basic regulation of employment conditions will invariably affect the cost and price of services."). But "ERISA does not preempt cash wage requirements unrelated to employee benefits, nor does it require the state to encourage benefits contributions by reducing the minimum cash wage where an employer makes large benefits contributions." Keystone, 37 F.3d at 959.
 
 
 33
 Although California's prevailing wage law may discourage employer benefit contributions greater than the excess benefits cap, this effect is not sufficient by itself to find ERISA preemption. After all, a cash-only prevailing wage law, which clearly would not be preempted, would more severely discourage benefits contributions than the current scheme. The economic effect of the current scheme is too tenuous, remote or peripheral to support a finding that the law "relates to" employee benefit plans.
 
 
 34
 In Employee Staffing we set forth a simplified test for determining whether a law "relates to" ERISA plans for preemption purposes:
 
 
 35
 Is the state telling employers how to write their ERISA plans, or conditioning some requirement on how they write their ERISA plans? Or is it telling them that regardless of how they write their ERISA plans, they must do something else outside and independently of the ERISA plans? If the latter ... there is no preemption.
 
 
 36
 Employee Staffing, 20 F.3d at 1041. In the current case, California is not telling employers how to write their ERISA plans. Nor is it conditioning some requirement on how individual employers write their ERISA plans. Instead, it is telling employers that regardless of how they write their ERISA plans, or even whether they have ERISA plans at all, they must pay the prevailing wage, and they may do so through some combination of cash and benefits. Under either test as to whether a statute has a connection with ERISA plans, California's prevailing wage law does not have a sufficient connection to find that the statute is preempted.
 
 
 37
 In conclusion, California's prevailing wage law does not refer to or have a connection with ERISA plans sufficient to find that it "relates to" such plans. Therefore, the prevailing wage provisions of California's statute are not preempted by ERISA.
 
 III
 
 38
 California's prevailing wage law has some connection to employee benefits and, therefore, has some connection, however indirect, to employee benefit plans. Nevertheless, we hold that this connection is not sufficient to find that the statute is preempted by ERISA. Therefore, we affirm the district court's judgment that ERISA does not preempt California's two-tier prevailing wage scheme.
 
 
 
 [1]
 Section 514(a) provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); see also 29 U.S.C. § 1002(1) (defining employee benefit plans)
 
 
 [2]
 But see Associated Builders and Contractors v. Curry, 797 F.Supp. 1528, 1537-38 (N.D.Cal.1992) (holding that the same California statute at issue in Baca is not preempted by ERISA, otherwise it "would vitiate, without any discernable [sic] legislative intent or purpose, the state's traditional power to regulate wages and to establish and enforce other labor standards"), vacated, 68 F.3d 342 (9th Cir.1995) (remanding for decision in light of Dillingham )
 
 
 [3]
 The regulations also include anticipated employer costs for providing benefits not administered by a fund, plan, or program. In other words, "employer payments" also includes the costs of benefits not provided through an ERISA plan. Cal.Code Regs. tit. 8, § 16000
 
 
 [4]
 Otherwise, with no guidance as to what constitutes an employee benefit, employers could devise all sorts of clever benefit plans--for example, air conditioning or heating in the workplace could be considered an employee benefit